**Wade LADD, Appellee,**

v.

**STATE OF SOUTH CAROLINA, William D. Leeke, Director, South Carolina Department of Corrections, Appellants.**

**No. 13267.**

United States Court of Appeals
Fourth Circuit.

Argued June 9, 1969.

Decided Sept. 24, 1969.

---

871

Emmet H. Clair, Asst. Atty. Gen., of South Carolina (Daniel R. McLeod, Atty. Gen. of South Carolina, and B. O. Thomason, Jr., Solicitor, Thirteenth Judicial Circuit of South Carolina, on brief) for appellants.

Geddes H. Martin, Columbia, S. C. (Court-appointed counsel) for appellee.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

The State appeals from the order of the district court granting a writ of habeas corpus to South Carolina prisoner Wade Ladd. Release, unless the State elected to try him again, was granted Ladd on the theory that an improper contact with a juror, presumptively prejudicial, destroyed the integrity of the

trial. Discerning no possible prejudice to Ladd in the unusual circumstances presented here, we reverse the decision of the district court.

Upon a jury verdict of guilty of rape with a recommendation of mercy, Ladd was sentenced to 12 years, during the February 1966 term of the Court of General Sessions for Pickens County. Before the commencement of the trial, two members of the general venire were contacted *in Ladd's favor* in the courthouse lobby by one Alton Youngblood. One of the venire members—Mr. Alexander—actually sat on Ladd's jury. During the trial, the fact that such a contact had occurred was made known to the judge who, in the jury's absence, conducted an inquiry into the occurrence. Mr. Dickert—the venireman not serving on Ladd's jury—testified that Youngblood "just said that he would like for us to listen to the evidence closely and he knew the girl [the prosecutrix] and she had another boy in jail on the same count and that was all." Not surprisingly, Ladd's counsel made no motion for mistrial following this favorable, from Ladd's viewpoint, revelation.

In his charge to the jury, the trial judge reasonably attempted to correct any possible harmful effect of the contact. He cautioned the jurors against considering in their decision anything heard outside the courtroom. He also stated: "And Mr. Foreman, anybody who who should attempt to influence a juror either before or after or during Court in my judgment commits one of the most dastardly acts a man can do, in my opinion." The defense took no exception to these instructions.

■ After exhaustion of his state remedies, Ladd petitioned the district court. Agreeing with Ladd's position, that court correctly held that Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), established that any improper private communication to a juror is presumptively prejudicial, and that the State must carry the heavy burden of disproving prejudice. The court reasoned that the matter was further complicated by the instructions of the trial judge, and concluded that it was impossible on the state of the record to say whether or not these instructions "had any effect on the jury." The court held further that Ladd's counsel's failure to move for a mistrial did not constitute waiver of the objection. "The only way the defendant could waive his right to question the possibility of prejudice resulting from the communication was for the Court to have inquired of the defendant himself after a full disclosure to him whether he waived his rights and the defendant personally to have understandingly and purposely waived such rights." Thus, finding no waiver, and concluding that the lapse of almost three years since trial would make fruitless an inquiry into whether prejudice occurred, the district court ordered release or a new trial, without holding an evidentiary hearing.

■ We agree that it was unnecessary to have a hearing. All the pertinent information had been developed in the extraordinary proceeding conducted during the trial. The facts are not disputed. The instructions of the trial judge are set out in the record verbatim. True, we do not know what went on in the jury room, but with the district judge we think it doubtful that jury discussion could be reconstructed at this late date. Thus we need not decide whether South Carolina law controls and whether it prohibits inquiries into the deliberations of a jury—as urged by the State. We conclude that the record before us is adequate, without expansion through an evidentiary hearing, to determine the question whether this improper contact, taken together with those portions of the jury charge cautioning against crediting out-of-court statements, produced such an overbearing effect on the mind of the contacted juror as to deprive Ladd of his Sixth Amendment right to trial by an impartial jury.

Remmer v. United States, *supra,* is plainly distinguishable. In *Remmer,* after an unauthorized communication to a juror arguably in favor of the defendant, the Federal Bureau of Investigation, upon the judge's request, and without the

knowledge or consent of defense counsel, inquired into the circumstances of the contact. It was this inquiry which heavily weighted the decision and prompted the warning against all circumstances that might prejudice the mind of the juror:

"The sending of an F.B.I. agent in the midst of a trial to investigate a juror as to his conduct is bound to impress the juror and is very apt to do so unduly. A juror must feel free to exercise his functions without the F.B.I. or anyone else looking over his shoulder." 347 U.S. at 229, 74 S.Ct., at 451.

Here, Ladd's contention that the judge's remarks must have been thought by the contacted juror to be addressed to him, and must have discomfited him, is unpersuasive because, as Ladd's counsel concedes in argument, the contacted juror did not know that the judge was aware of the contact, and therefore could not have taken the charge personally. The disclosure to the judge came from the venire member who did *not* serve. Moreover, the trial judge did not berate one in the position of the contacted juror; the criticism in his remark was directed to the outsider who might attempt such a thing. Under these circumstances, we think the jury instructions entirely proper. Ladd was unable, in argument, to suggest a better alternative to the procedure chosen by the trial judge, after the contact had occurred, and in the absence of a motion from Ladd for a mistrial.

*Remmer* is further distinguishable in that the fact of the contact was not made known to the defendant there nor to his counsel until his trial was over and he had been convicted. Thus Remmer had no opportunity to object or make such motions as he considered proper, and he could not be considered to have waived such opportunity. Here, we need not reach the waiver question, as we hold that neither the contact itself in favor of Ladd, nor the judge's instructions, nor the combination of the two, could have

prejudiced Ladd. However, we observe nothing in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), which would prohibit our concluding that counsel's decision here not to move for a mistrial was a tactical decision by counsel, binding upon his client even without his personal declaration of concurrence.

█ We think the State fully sustained the heavy burden put upon it by *Remmer* in the offering of the testimony of the venire man Dickert in an adversary proceeding conducted in open court during the state trial. What the state trial judge did was precisely that taught by *Remmer:* he "determine[d] the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." 347 U.S. 227, 230, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656. This is the reverse of the secret, ex parte procedure condemned in *Remmer*.

We conclude, as did the state trial judge, that the improper contact was beneficial rather than harmful to Ladd. To sustain the grant of the writ on these facts would mean that a criminal defendant can tamper with a jury with the assurance either of acquittal or a new trial if his tampering proves unsuccessful.[1]

█ Ladd's petition contained two other allegations of constitutional denial not reached by the district court. We find merit in neither of them. First, he urges that he was identified by the prosecutrix and another in a line-up conducted without allowing him to have counsel present. Though the right to counsel at a line-up has been established in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), that ruling does not apply to line-ups conducted, as Ladd's was, in earlier years. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). His further assertions that he was placed in the front of the group of about 15 men to be viewed, and that the others were not of his

---

1. We make this observation abstractly. The record does not disclose that Ladd actually initiated the improper contact.

same age, size or build, do not amount to the level of showing that the conduct of the line-up was fundamentally unfair.

Ladd's last claim is that he was prejudiced by the trial judge's refusal to allow cross-examination of the prosecutrix's mother relative to a warrant she had signed charging another man with an earlier abduction of the prosecutrix. The prosecutrix herself was allowed to be cross-examined concerning charges pressed against another man. On such a collateral matter we think the trial judge did not abuse his discretion reasonably to control the extent of the testimony.

Reversed.