**Junior Glaten THACKER**

v.

**J. D. COX, Superintendent of the Virginia State Penitentiary.**

**Civ. A. No. 5336.**

United States District Court, E. D. Virginia, Richmond Division.

Feb. 17, 1970.

———◆———

E. G. Allen, Jr., Richmond, Va., for petitioner.

O. P. Pollard, Richmond, Va., for respondent.

## MEMORANDUM

MERHIGE, District Judge.

The petitioner herein filed a petition for a writ of habeas corpus and was granted leave to proceed in forma pauperis. The respondent answered and moved to dismiss.

This Court appointed counsel to represent petitioner and granted a plenary hearing on all issues raised by his petition.

Thacker's main contention, which developed during the plenary hearing, centered around a colloquy between the trial judge, petitioner, petitioner's counsel and the prosecuting attorney, which took place in the presence of the prospective jurors and after the veniremen's names had been called, court reporter sworn, the indictment read, and the petitioner had entered a plea of not guilty. Specifically, petitioner alleges that the substance of this colloquy so prejudiced the veniremen that the subsequently empanelled jury could not have rendered him a fair trial in conformance with applicable Due Process standards.

Subsequent to the aforementioned plenary hearing, the Court invited both parties to submit further evidence and additional argument in regard to this action. Upon review of the record, both parties declined such invitation informing the Court they felt further proceedings would not be of benefit to the Court or the parties in reaching a final decision.

The Court has considered the entire record and finds the factual matters concerning the alleged crime not to have been greatly in dispute before the Hustings Court for the City of Petersburg, wherein he was tried on a charge of murder.

The trial record shows that petitioner had been engaged to be married to one Charlotte Tate. Subsequent thereto Miss Tate allegedly informed him she was no longer in love with him and attempted to return the engagement ring which he had given her. This termination of the engagement allegedly occurred in December 1964. The record shows that in February 1965, Miss Tate secretly married one Jamsched Haq, an intern at the Petersburg Hospital where she, Miss Tate, was a student nurse.

The trial record shows that on April 2, 1965, petitioner Thacker went to the Petersburg General Hospital and after some conversation with Miss Tate, which apparently took place some time prior to 7:00 a. m., Miss Tate was seen running from the hospital cafeteria into an adjoining hall, allegedly followed by Thacker with a pistol in his hand. The record indicates that he, Thacker, shot his former fiancee at least three times, causing her death.

Thacker was indicted for murder by a Grand Jury of the Hustings Court of the City of Petersburg, Virginia, which court appointed counsel for him, and the trial took place on September 8–9, 1965. Thacker's defense was one of insanity at the time of the alleged offense. He was ultimately convicted by a jury of first degree murder and sentenced to a term of 99 years in prison.

Taken in its entire spectrum, "fair trial" necessitates trial before an impartial judge, honest jury, and an atmosphere of judicial calm. State v. Leland, 190 Or. 598, 227 P.2d 785, aff'd. 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), reh. den. 344 U.S. 848, 73 S.Ct. 4, 97 L.Ed. 659. While the "fair trial" requirement does not necessitate trial free of all error, it does require the proceedings to be "fundamentally fair." United States v. D'Antonio, 362 F.2d 151 (7th Cir. 1966), cert. den. 385 U.S. 900, 87 S.Ct. 204, 17 L.Ed.2d 131.

Certainly a vital element of this maze is the jury, and only recently the United States Supreme Court has voiced its interpretation reiterating that the jury system is an integral part of the credo of the American legal system in its application to criminal proceedings. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Duncan v. Louisiana, 391 U.S. 145, 191, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522 (1968); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). More important, perhaps, is the incorporation of the Sixth Amendment right to trial by jury into the Fourteenth Amendment's due process clause, exemplified by the Court's application of that right to state criminal proceedings. Inherent in due process is "fundamental fairness," and this abstract requirement imposes, therefore, more than simply the furnishing of a jury; it requires that the jury, once furnished, be able to render a fair and impartial decision to both the prosecution and defense. Thus, the proposition is two-fold: first, that the defendant is entitled to trial by jury where charged with a serious crime, Duncan v. Louisiana, supra; and second, that the jury be able to render a fair and impartial decision. Irvin v. Dowd, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959).

Once admitting, therefore, that the object in securing a jury is to select jurors whose minds are unclouded by prejudice or bias, see Michie's Jurisprudence, Vol. II, Jury § 37, if such object is not met, the subsequent proceedings are tainted by "unfairness" of constitutional dimensions. Irvin v. Dowd, supra; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923); Harris v. North Carolina, No. 13,853, Mem. dec. (4th Cir., Aug. 27, 1969). While the courts are not naive to the fact that in every case it is not possible to empanel a jury with completely sterile minds concerning the proceedings at hand, they have sought to protect this vital ingredient of a fair trial with utmost vigilance. See Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). While society, therefore, has a legitimate interest in convicting the guilty, it also has a duty to insure the accused is tried fairly. Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966), cert. den. 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370. So adamant, in fact, is the Court's determination to insure the accuracy of the guilt determining process, that it has used this standard in making determinations pertaining to retroactivity. Compare Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Against this background, it now becomes incumbent upon this Court to determine whether or not the remarks made during the colloquy, having been heard by the veniremen, prejudiced the defendant's case in such manner as to render the subsequent proceedings vitiated by constitutional strictures; and, did the defendant, in his collateral attack, have the burden of affirmatively showing that such prejudice actually prohibited the proceedings from being constitutionally sound.

Basically, the allegations of prejudice were prompted by the trial court's inquiry to the defendant as to whether he, the defendant, had had an opportunity to talk to his court-appointed counsel. The defendant's reply was to the effect

that he was not satisfied with counsel, whereby counsel gratuitously responded that the defendant had been uncooperative, that he wished to be dismissed from the assignment because of these difficulties, and finally that following a court appearance, prior to trial,

> [h]e went to jail and told the police officer that *he would kill me* (emphasis supplied). I went over to the jail as soon as I got the word. He denied it. He also, at that time, refused to see me. [Trial Transcript, p. 12]

In considering the issue of prejudice to the defendant's cause flowing from the aforementioned statement on appeal, the Supreme Court of Appeals of Virginia considered the due process violation, if any, to have flowed from the local jury becoming incensed over the alleged threat made by Thacker toward his well known, capable, criminal trial attorney,· thereby prejudicing them toward the defendant personally from the outset. See Thacker v. Com. of Virginia, 207 Va. 962, 154 S.E.2d 130, 132 (1967). In this contention the Court found no substance. The Court of Appeals of Virginia held further that there had been no showing that Thacker had been prejudiced.

 While this Court is bound by the interpretation of Virginia law of the Supreme Court of Appeals of Virginia, the Court does not feel that the issue was presented to the Virginia Supreme Court of Appeals in such a manner as to require it to consider the matter in depth. In any event, this Court, regardless of the high regard it holds for the learned opinions of Virginia's highest court, is duty bound not to ascribe to what it considers to be a misapplication of federal law in reaching a decision in a given case. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The Court first draws its attention to the defense counsel's remark concerning

the threat on his life alleged to have been made by Thacker.

Crucial to answering the initial inquiry is the fact that the defendant inserted the affirmative defense of insanity to the charge leveled against him by the state. Furthermore, it was the function of the jury to determine factually, within the framework of legal principles supplied them by the Court, if the defense was successfully carried forth. See Christian v. Commonwealth, 202 Va. 311, 117 S.E.2d 72 (1960); Thompson v. Commonwealth, 193 Va. 704, 70 S.E.2d 284 (1952). Indeed, if the jury determined that the defendant had factually shouldered his burden, then he would have been exculpated of the crime with which he had been charged.

The obvious danger of counsel's statement, therefore, is that it may have prejudiced the jury in their consideration of the tendered defense. It is certainly reasonable to conclude that the jury, in deciphering counsel's statement, found him not to be a one-time insane killer, but a cold, calculating murderer who violently disposed of anyone who refused to cooperate with him in a manner he thought appropriate. This probability is buttressed by the fact that the statement was made by an officer of the Court and the judge was silent in reference to the statement both in the *voir dire* examination of the prospective jurors and any specific admonition to the jury concerning the statement.[1] If the jury was influenced, consciously or subconsciously, in this regard, the defendant would have received a trial tantamount to one where an accused stood guilty before being so proven. Such reasoning is substantiated by the fact that there was never any question as to who fired the shots which killed the deceased—the crucial question was whether the defendant was legally insane at the time of the shooting. If, per chance, a voluntary decision on this issue was

---

1. See Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); concerning similar facts and their effect on prejudicial determinations.

usurped from the jury's determination, though inadvertently, the petitioner's secured rights under due process were violated.

Although the foregoing, standing alone, indicates an atmosphere substantially susceptible to breeding a prejudicial effect surrounding the trial of this case, the record is yet replete with added language tending to buttress this conclusion.

As previously stated, Thacker strongly urged the Court to dismiss his court-appointed attorney. The substance of his request centered around the attorney's alleged refusal to prepare the case in a manner suitable to the defendant. [Trial Transcript, pp. 7–11]. The attorney, in turn, explained his actions concerning pre-trial preparation of the case and requested that he be relieved from participation in the trial, such request being prompted by Thacker's antagonism toward him. Such request was denied. [Trial Transcript, pp. 11–13].

In line with Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963), the courts have jealously guarded the constitutional right of an individual accused of a crime to be represented by counsel. See e. g. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Inasmuch as the representation is constitutionally required, it necessarily follows that appointment of counsel is not merely a formalism to be mechanically exercised by the courts, but is a constitutional requirement placing an affirmative duty on the courts to appoint counsel who will represent a defendant fairly. Case v. North Carolina, 315 F.2d 743 (4th Cir. 1963).

Ineffective representation can arise from diverse sets of circumstances. Certainly, conflicts of interest arising between an attorney and his client's cause have been recognized as creating a justiciable federal controversy. Goodson v. Peyton, 351 F.2d 905 (4th Cir. 1965); Case v. North Carolina, *supra*. This Court makes no conclusive finding that such conflict existed. Indeed, Thacker's attorney appears to have admirably presented his case. Unfortunately, counsel's spontaneous and gratuitous defense of his preparation was made within earshot of the venire.

Thus, while the trial judge's refusal of the request may well have been void of constitutional defect based on reasons for dismissal as enumerated by Thacker, Tompa v. Commonwealth of Va. ex rel. Cunningham, 331 F.2d 552 (4th Cir. 1964), the colloquy, in revealing the argumentative disparity between Thacker and his counsel before the venire, may well have served to be an additive to a possible mounting, extrinsic antagonism by the jury toward the defendant.[2]

There is another occurrence which transpired in the presence of the jury panel which, in the Court's opinion, contributes to the totality of circumstances leading to the Court's conclusion that the judgment of conviction must be vacated.

Defense counsel moved, at the initial stages of the proceedings, for a continuance based on the unavailability of a defense witness to appear at the trial by reason of illness. The pertinent portions of the colloquy which followed are here set out verbatim:

> DEFENSE COUNSEL: Now, I think the Court should know that I have talked to Mrs. Thacker and she informed me that if I subpoenaed her —Your Honor, I don't think the prospective jurors should hear this.

> THE COURT: I don't know what you are going to say.

> DEFENSE COUNSEL: She is a very good witness for the defense. She

---

2. The Court cannot help but note, in this regard, that Thacker's challenge of incompetency was aimed at an outstanding figure in the Petersburg, Virginia, community, and was overheard by a Petersburg area venire. See also statement of one member of venire to the effect that "I would have to have an awful lot of proof that he was insane on that day." [Trial Transcript, p. 16.]

is ill and unable to appear. Now, Mr. Thacker, her husband, is here and I understand that she will be able to attend Court tomorrow. I don't want to postpone it, if possible, or the case going over.

PROSECUTOR: Your Honor, if the materiality of this witness is sufficient, that would make a difference. Is this a factual witness? Was she anywhere near the crime when the crime was committed? I think that would be important.

THE COURT: Do I understand the witness was not subpoenaed?

DEFENSE COUNSEL: That is right, Your Honor. She informed me that she did not wish to be subpoenaed, that she would be in Court; that if I subpoenaed her, she would not cooperate on the stand, and, therefore, to help the defense we thought it would be better to have her come voluntarily.

\* \* \* \* \* \*

PROSECUTOR: I submit that a witness who won't cooperate—I assume that means telling the truth—whether she is summoned or not summoned, if that is a condition as to whether or not she will cooperate, I am not sure this is a competent witness. I don't know who this witness is, but if it is a characteristic of the witness not to cooperate except under certain conditions, I don't think she would be a competent witness.

I submit the defendant has not complied with the rules of procedure. He has not summoned her. I asked the question was she close to the crime when the crime was committed. I don't know. I submit that the proper procedure has not been complied with in reference to having her here, to entitle the defendant to a continuance. I also question the materiality of this witness. \* \* \*—or do you want to rule on that?

THE COURT: Yes, sir, I will rule on this motion. It appears to the Court that this witness has not been subpoenaed. There has not been a proper showing by testimony that she is unable to attend Court because of illness, and there has been no showing that her testimony would be material or whether it would be merely accumulative or not. The requirements in general for the Court to continue due to absence of a witness have not been met. Accordingly, the Court overrules the motion for a continuance.

\* \* \* \* \* \*

PROSECUTOR: Your Honor, perhaps we should consider the question and answer before you rule, and that is how far this proposed witness was from the crime at the time of the alleged commission of the crime.

THE COURT: Why do you want to show that?

PROSECUTOR: Because if it is a material witness, I would want it and I think the Court would want it.

THE COURT—TO DEFENSE COUNSEL: Can you answer that question?

DEFENSE COUNSEL: I do not see where this is material, Judge.

THE COURT: The Court will ask you then, how close the witness was to the scene of the alleged crime?

DEFENSE COUNSEL: I would say, Judge, Chesterfield County is about fifteen or twenty miles from it.

(Trial Transcript, pp. 3–6.)

Unfortunately, as has been noted, all of the foregoing transpired before the venire. Although the particular witness referred to in the colloquy was not called, any number of witnesses were called on behalf of the defendant, none of whom would have been in the category of one who was "close to the crime when the crime was committed" and hence, as erroneously suggested by the

colloquy hereinabove set out, a material witness. The danger of the jury having formed an impression that in order for one to be a material witness he or she had to have been close to the scene of the crime, is further buttressed by the fact that they were never instructed how to consider, weigh and determine the value of testimony and other evidence submitted for their consideration, as suggested by the opinions of the Virginia Supreme Court of Appeals. See Low Moor Iron Co. of Va. v. Jackson, 117 Va. 76, 84, 84 S.E. 100, 102; Diggs v. Lail, 201 Va. 871, 877, 114 S.E.2d 743, 748; Virginia Jury Instructions, § 3.07.

Cognizance is taken at the outset that the trial court did not admonish the jury to disregard the statements of counsel, nor did it question the jury on *voir dire* in reference to the respective statements as they may have affected the jurors in their ability to render a fair and impartial verdict.[3] Nor was the venire dismissed and another drawn, or a mis-trial declared. Indeed, at the outset of the colloquy defense counsel suggested the venire be excused; such suggestion, however, was not acted upon, and the jurors heard all of what transpired. Although the corrective measures, or a systematic selection of the same, were within the power of the trial judge "as the governor of the trial for the purpose of assuring its proper conduct," Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933); see also, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), evidently none were used in order to insure against the possibility of prejudice. Consequently, this Court is not called upon to weigh the curative effects such admonitions or strictures may have had. See Secor v. United States, 223 F.2d 171 (8th Cir. 1955), cert. den. Callanan v. United States, 350 U.S. 862, 76 S.Ct.

102, 100 L.Ed. 764 (1955). It would likewise be inappropriate for this Court to attempt to corral the jurors at this late date and subject their verdict to "public sounding" in an attempt to clarify the alleged prejudice. Rees v. Peyton, 341 F.2d 859, 864 (4th Cir. 1965). Nor is an exhaustive search for harmless error required. Clearly, under the applicable standards established by the Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), if it be determined that the colloquy had a prejudicial effect on Thacker's defense, the error was not harmless.

■ The Court has no difficulty in deciding that the totality of the several colloquies established an initial base of prejudice surrounding the subsequent proceedings. Considering the nature of the crime, the characterization of a prospective defense witness represented to the Court to be vital, and the innuendo, as innocent as it may have been, concerning materiality of the prospective testimony of a witness absent the scene of the alleged crime at the time of its alleged occurrence, and the *sub rosa* destruction of Thacker's defense, this Court is led inescapably to this conclusion. At the very least, a "probability" of prejudice existed and no more need have existed to dictate our conclusion. In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955).

Having thus determined that the statements were at least "probably" prejudicial to the defendant, and being mindful of the depth of its prejudicial effect, attention is now turned to the proposition that the defendant was required to show in fact that the probability actually became a reality. To this supposition the Court answers in the negative, realizing, of course, that the trial transcript, a part of the record

---

3. However, this Court is mindful of the fact that even in cases where the jury has been instructed to disregard potentially prejudicial matter, "[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury,"

Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949), "all practicing lawyers know to be unmitigated fiction." Blumenthal v. United States, 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947).

herein, leaves little doubt of the existing prejudice.

There can be little doubt that had the prospective jurors admitted on *voir dire*, or otherwise, that their ability to judge fairly had been materially altered by the statement, they could not have constitutionally been empanelled as jurors. To do otherwise would have uncontestably offended due process. The "probability" which this Court has found to have existed, leads it ultimately to the conclusion that the trial was deficient in the same degree when measured by traditional concepts of fundamental fairness. "Our system of law has always endeavored to prevent even the probability of unfairness * * *," In re Murchison, *supra*, and where the constitutional rights of an accused have been infringed upon, it is enough to void the proceedings affected by infringement if the defendant was reasonably prejudiced. See Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Glasser v. United States, *supra*.[4]

In line with the substance of this rationale, the Court, in Rideau v. Louisiana, *supra*, was led to conclude:

But we do not hesitate to hold, without pausing to examine a particularized transcript of the *voir dire* examination of the members of the jury, that due process in this case required a trial before a jury drawn from a community of people who had not seen and heard Rideau's televised 'interview' *Id.* 373 U.S. at 727, 83 S.Ct. at 1419.

Thus, the Court is loathe to uphold as constitutional a trial in which the credibility of the guilt determining process is put in issue and the probability of its harm is evident from a totality of circumstances. Obeying the mandate of authority, it is here held, unhesitatingly, that identified prejudice, under such circumstances, need not be shown, but only the *probability* of such prejudice. Parker v. Gladden, *supra*; Sheppard v.

Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1964); In re Murchison, *supra*. The record clearly indicates such to have been in existence. In fact, in a given case similar to the case here present, where a prejudicial extra-judicial statement is made in front of the veniremen, the state may well have to carry the heavy burden of disproving prejudice. See Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); Ladd v. South Carolina, 415 F.2d 870 (4th Cir. Sept. 1969).

Once determining that the totality of circumstances gives rise to a probability of trial couched in an unconstitutional atmosphere, and the courts cannot objectively determine if an unconstitutional bias did indeed exist, the problem has been, as stated *supra*, reconciled in favor of the defendant. To decide otherwise would, in effect, be sanctioning that which cannot be allowed—namely, allowing the jury to not only be triers of the facts but also curers of legal deficiencies. Such practices are realistically unsound and constitutionally prohibited.

The courts are swayed by the acknowledgment that "* * * critical deficiencies cannot be supplied by inference or assumption as to the interpretation applied subjectively by twelve jurors, individually and collectively." Braley v. Gladden, 403 F.2d 858 (9th Cir. 1918). To allow the jury to make an attempt at "mental gymnastics" is discouraged by the United States Supreme Court, see Nash v. United States, 54 F.2d 1006 (2d Cir. 1930), cert. den. 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932), and the basis of this reasoning is especially made prevalent in cases involving one's freedom where, as previously stated, the problem takes on constitutional dimensions. In Stein v. New

---

4. Although *Fahy* deals with a confession issue and *Glasser* with right to counsel, both concern the guilt determining process.

York, 346 U.S. 156, 73 S.Ct. 1077, 97 L. Ed. 1522 (1953), the Court, though affirming the verdict of guilty, did recognize the problem when it stated:

> Sometimes the record permits a guess or inference, but where other evidence of guilt is strong a reviewing court cannot learn whether the final result was to receive or reject the confessions as evidence of guilt. Perhaps a more serious, practical cause of dissatisfaction is the absence of any assurance that the confessions did not serve as makeweights in a compromise verdict, some jurors accepting the confessions to overcome lingering doubt of guilt * * * *Id.* at 177,[5] 73 S.Ct. at 1089.

"The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print," Patterson v. Colorado, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907): per Holmes, J., and nothing short of these standards will insure the "* * * judicial serenity and calm to which [Thacker] was entitled." Estes v. Texas, *supra*, 381 U.S. at 536, 85 S.Ct. at 1629.

■ For evident reasons, and similar to the situation in Stein v. New York, *supra*, a jury cannot be allowed to receive incompetent testimony, to sift the good from the bad, when the depredation of an accused's rights hang in the balance of their being able to do so. Certainly, the statements we have been considering could not have been introduced in evidence, at least in the context in which the veniremen heard them. Being incompetent, regardless of their truthfulness, they could not be used to convict, see Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

Thus, the only conceivable panacea is the issuance of the writ.

Accordingly, an order consistent with this opinion will be entered.

---

5. But see Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), overruling *Stein* as being constitutionally deficient for the circumstances which *Stein* admitted to be prevalently in existence, and holding that such circumstances permeated the guilt determining process.