COMMONWEALTH *vs.* MacArthur Denson.

Hampden.   January 20, 1983. — September 30, 1983.

Present: Brown, Rose, & Smith, JJ.

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double
    jeopardy, Mistrial, Instructions to jury. *Evidence,* Prior conviction.
    *Witness,* Impeachment.

The defendant in a rape case was not entitled to a dismissal of indictments
    against him on double jeopardy grounds where the judge's declaration
    of a mistrial, over the defendant's objection, was a matter of manifest
    necessity arising from an outburst in the courtroom by the defendant's
    mother disparaging the complainant's character and reputation for
    chastity.  [680-683]
Instructions to the jury at the trial of a rape case adequately countered
    any prejudice to the defendant that may have been occasioned by in-
    troduction of the defendant's prior conviction for breaking and enter-
    ing immediately after the defendant's testimony that the complain-
    ant's home had been locked when he left it and that, contrary to the
    complainant's testimony, he was not inside the complainant's home
    when she arrived.  [683-684]
There was no merit to the contention of the defendant in a rape case that
    the jury instructions on the use of prior inconsistent statements were
    restrictive to the point of denying him his right to impeach the com-
    plaining witness.  [684-685]


INDICTMENTS found and returned in the Superior Court
Department on April 21, 1981.

A motion to dismiss was heard by *Cross,* J., and the cases
were tried before him.

*Patricia A. O'Neill* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for
the Commonwealth.

Rose, J.   The defendant was indicted for aggravated rape
and assault and battery by means of a dangerous weapon. The
defendant's first trial ended in a declaration of mistrial over

the defendant's objection. On retrial the defendant was convicted of both offenses. The defendant assigns as error: (1) the denial of his motion to dismiss the indictments on the ground that the double jeopardy clause barred his retrial; (2) the manner of the Commonwealth's introduction of the defendant's prior conviction; and (3) certain of the jury instructions on the use of prior inconsistent statements. We affirm the convictions.

We summarize the facts. In the first trial, as in the second, the defendant offered consent as his defense to the aggravated rape charge and denied the assault and battery with a dangerous weapon charge. The first trial progressed up to the point of the cross-examination of the defendant. After the defendant had answered "No" to a question whether he had used a rope around the complainant's neck, a woman in the courtroom gallery made the following outburst:

> "No he didn't. [The complainant] is nothing but a slut and a whore. I've known her twenty-four years. She's a prostitute and everything else. That's all she is."

From the witness stand the defendant then said, "Go out with my mother."[1] The woman was later identified as the defendant's mother.

At this point there was a bench conference. The Commonwealth moved for a mistrial; the defendant objected. The trial judge took the motion under advisement, gave a lengthy curative instruction to the jury and recessed the trial from that time (Wednesday afternoon) until Friday morning. In the interim, a local newspaper printed an article on the courtroom outburst, reporting that it might result in a mistrial.

On Friday morning the trial judge heard both counsel on the motion for mistrial. The Commonwealth argued that the complainant's credibility had been damaged beyond repair by any instruction and that since credibility was the

---

[1] To whom this request was directed is unclear from the record.

critical issue in the case a mistrial was necessary. The defendant disputed the extent of damage to the victim's credibility and suggested a voir dire. Following a brief recess, the trial judge granted the motion for mistrial stating that he "[did] not do this lightly." The judge noted that he had "reflected and considered, among other things, conducting a voir dire of the jurors" but had concluded that a voir dire would exacerbate the impact of the outburst, if the local newspaper article had not done so already. From his remarks it appears that the trial judge accorded great weight to the defendant's right to have his trial concluded in a single proceeding, before a particular tribunal. On balance, the trial judge concluded that there was "material prejudice of the jurors' ability to deliberate impartially" creating "manifest necessity" for a mistrial.

At the outset of the second trial, the defendant moved to dismiss the indictments on double jeopardy grounds, arguing that the mistrial had been declared without manifest necessity. The motion was denied.

From evidence adduced at the second trial, the jury could have found the following: The defendant was a friend of the complainant's sons. On the evening of April 1, 1980, the defendant stayed overnight at the complainant's home with two of her sons. The complainant stayed overnight at a friend's home. On the morning of April 2, the defendant left the complainant's home with one of her sons, returned alone, and then left again with the second son. The second son locked the door upon leaving. When the complainant returned home later that morning, the defendant was there alone. As the complainant was moving about the house doing various household tasks, the defendant grabbed her, brought her to a couch and tied a rope around her neck, choking her. The defendant then raped her.

1. The defendant contends that there was no "manifest necessity" for the mistrial declared over his objection at his first trial. See *Arizona* v. *Washington*, 434 U.S. 497, 505 (1978). There is no mechanical formula for determining whether manifest necessity for a mistrial is present in a par-

ticular case. *Commonwealth* v. *Reinstein*, 381 Mass. 555, 560-561 (1980). The trial judge must exercise sound discretion, balancing the defendant's "valued right to have his trial completed by a particular tribunal," *Arizona* v. *Washington, supra* at 509, against the "public interest in just judgments," *id.* at 510. See *Jones* v. *Commonwealth*, 379 Mass. 607, 619-620 (1980). In exercising this discretion, the trial judge must: first, afford counsel a full opportunity to be heard; and second, carefully consider alternatives to the drastic measure of a mistrial. *Arizona* v. *Washington, supra* at 515-516; *Jones* v. *Commonwealth, supra* at 618. See *Reinstein* v. *Superior Court*, 661 F.2d 255, 257 (1st Cir. 1981). An exercise of sound discretion by the trial judge, particularly if it involves evaluation of the significance of juror bias, is entitled to appellate deference. *Arizona* v. *Washington, supra* at 509-510; *United States* v. *Pierce*, 593 F.2d 415, 419 (1st Cir. 1979). See *Barton* v. *Commonwealth*, 385 Mass. 517, 519 (1982).

In the circumstances of the defendant's first trial, declaration of a mistrial was an exercise of sound discretion. The trial judge afforded both counsel two opportunities to be heard on the motion for mistrial. Contrast *Jones* v. *Commonwealth, supra* at 618; *United States* v. *Pierce, supra* at 419. As alternatives to a mistrial, the trial judge considered a curative instruction and the defendant's suggestion of a juror voir dire. Contrast *Jones* v. *Commonwealth, supra* at 618-619; *Barton* v. *Commonwealth, supra* at 519. The decision to reject the alternatives and declare a mistrial was hardly precipitous, coming after two recesses, one of substantial length. Cf. *Commonwealth* v. *Reinstein, supra* at 562. Contrast *United States* v. *Pierce, supra* at 416-417.

We see no reason here to depart from the general rule of appellate deference to a trial judge's exercise of sound discretion on a motion for mistrial. The emotional outburst by the defendant's mother disparaging the complainant's character and reputation for chastity had the potential to compromise the jury's ability to determine the facts (par-

ticularly as to the issue of consent) solely on the basis of the evidence; to prejudice the jury against the complainant; and to divert its attention from the object of the trial.[2] Cf. *Commonwealth* v. *Joyce,* 382 Mass. 222 (1981). The trial judge was in the best position to assess the likelihood and magnitude of these potential dangers. *Arizona* v. *United States, supra* at 513-514. He determined that there was "material prejudice to the jurors' ability to deliberate impartially" and that the considered alternatives were inadequate to cure that prejudice.[3] Contrast *Commonwealth* v. *Fullerton,* 12 Mass. App. Ct. 985 (1981) (curative instruction adequate where the victim's aunt shouted "liar" during defendant's testimony); *Ladd* v. *South Carolina,* 415 F.2d 870, 872-873 (4th Cir.), cert. denied, 397 U.S. 1049 (1969) (curative instruction adequate where third person remarked to one venireman, later juror, on a rape case that he knew the complainant and that "she had another boy in jail on the same count"). "There can be no doubt that actual bias among jurors renders mistrial manifestly necessary to perserve the ends of public justice." *Elder* v. *Commonwealth,* 385 Mass. 128, 133 (1982). There was no abuse

---

[2] The outburst also frustrated the complainant's right and the public's interest against the introduction of evidence bearing on the complainant's reputation for chastity. See G. L. c. 233, § 21B (rape shield statute), *Commonwealth* v. *Joyce,* 382 Mass. 222, 228 (1981) ("Rape-shield statutes are 'aimed at eliminating a common defense strategy of trying the complaining witness rather than the defendant. The result of this strategy was harassment and further humiliation of the victim as well as discouraging victims of rape from reporting the crimes to law enforcement authorities'" [citation omitted].); *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 567-568 (1982).

[3] The only alternative suggested by the defendant was a voir dire of the jurors. Little would have been accomplished by a voir dire. There was no question that all of the jurors had heard the outburst. Contrast *Commonwealth* v. *Caine,* 366 Mass. 366, 372 (1974); *Barton* v. *Commonwealth,* 385 Mass. at 519. Although the jurors' exposure to the local newspaper article and their views on their own prejudice might have been ascertained, we cannot disagree with the trial judge's conclusion that, in the circumstances, such an inquiry would only have served to exacerbate any existing prejudice. Cf. *Commonwealth* v. *Reinstein,* 381 Mass. at 558 & n.4.

of discretion. There was manifest necessity for a mistrial.

2. The defendant contends that the manner in which the Commonwealth introduced a prior breaking and entering conviction against him was tantamount to a substantive use of the conviction and denied him a fair trial. The Commonwealth introduced the conviction over the defendant's objection immediately after the defendant's testimony that the complainant's home had been locked when he left it on the morning of April 2, 1980, and that, contrary to the complainant's testimony, he was not inside the complainant's home when she arrived later that morning. The defendant argues that this juxtaposition was intended to suggest to the jury that the defendant had not been invited in by the complainant as he claimed, but that he had broken in; from this the jury could infer that the complainant had not consented to sexual intercourse, as the defendant claimed, but that she had been raped. The admissibility of the conviction is conceded. The defendant relies on *Commonwealth* v. *Roberts,* 378 Mass. 116 (1979).

In some circumstances, the juxtaposition of a conviction with a question concerning a related matter may amount to "a trap . . . designed not to impeach the defendant's credibility but to establish substantively the defendant's propensity for violence" or for a particular crime. *Commonwealth* v. *Roberts, supra* at 127; *Commonwealth* v. *Felton, ante* 63, 66 (1983). See also *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 681 (1974) (Hennessey, J., concurring). Such use of a conviction violates both the letter and the spirit of G. L. c. 233, § 21. See *Commonwealth* v. *Felton, supra* at 66. See also *Commonwealth* v. *Roberts, supra* at 127. Although the better practice might be for the trial judge to exercise his discretion to prevent the overly suggestive introduction of an otherwise properly admissible prior conviction, limiting instructions will ordinarily obviate any harm to the defendant occasioned by such an introduction. See *Commonwealth* v. *Chase,* 372 Mass. 736, 750 (1977).

There was little danger that the jury would conclude that the defendant had a propensity for violence or a propensity to commit the types of acts involved in the charges against him. The conviction introduced against the defendant was for an offense entirely different in character from the offenses for which the defendant was being tried. Cf. *Commonwealth* v. *Whitehead*, 379 Mass. 640, 661 (1980). Contrast *Commonwealth* v. *Felton, supra*. The defendant requested and received a limiting instruction immediately after the introduction of the conviction. The judge again instructed the jury on the limited purpose of the prior conviction evidence in his final charge. Any prejudice to the defendant occasioned by the Commonwealth's manner of introducing the prior conviction was adequately countered by the judge's instructions. There was no error.

3. The defendant contends that the jury instructions on the use of prior inconsistent statements were restrictive to the point of denying him his right to impeach the complaining witness.[4] In particular, the defendant points to the

---

[4] The portion of the charge in issue is as follows:

"Now there has been evidence in this case of a witness, or a particular witness, testifying to certain facts, and there has been testimony that the witness made prior statements, outside of this courtroom, which may have been inconsistent with the in-court statement. This, of course, is for you to say.

"But whenever there is an introduction against a witness of a prior inconsistent statement made outside of this courtroom, that is done for the single purpose of impeaching the credibility or believability of the witness, if you find that it does impeach the credibility of the witness, if it makes that witness less believable to you. It is entirely up to you.

"If you find someone testified here in court before you radically different from something that he or she said or testified to on a prior occasion, it is for you to say whether or not that affects the witness' credibility or believability. I suppose the important thing in determining the credibility of a witness when faced with prior inconsistent statements made outside of court is whether or not that person's prior inconsistent statement is inconsistent in fact — and that is for you to say — and, if it is, then does it deal with something that was of major import or minor import. If it is something which is minor, then I suppose you would discard it if you did not think it affects the credibility of the witness. If it was of major concern, and you think

judge's instruction to the jurors that if they found a witness' prior statement to be inconsistent with his testimony, they could use the statement in judging the witness' credibility if they thought that his trial testimony was "an attempt to mislead" them.

The impeachment value of a witness' prior inconsistent statement lies in the jury's ability to infer from it that the witness was in error or lying during his trial testimony and to discount that testimony accordingly. Cf. McCormick, Evidence 97 n.42, 98 (2d ed. 1972). An instruction would diminish this impeachment value if it restricted the jury's ability to discount a witness' testimony on the basis of a prior statement to instances in which it believed that any inconsistency between the witness' trial testimony and the statement reflected falsification rather than error or confusion. "Viewing the charge in its entirety, as we must," *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005, 1008 (1982), we conclude that the judge's instructions to the jury did not have such an effect. There was no error.

*Judgments affirmed.*

that the witness' present testimony is now an attempt to mislead you, then you may use it in judging whether or not the witness is telling the truth. So you must scrutinize those situations of the type that I have mentioned here."