## CIRCUIT COURT OF FAIRFAX COUNTY

Heritage Financial
Investments

v.

Geiger

May 11, 1989

Case No. (Chancery) 105407

By JUDGE J. HOWE BROWN

This case is before the court on the defendant's motion to stay and for a protective order. The case arises from an employment agreement between the plaintiff and the defendant. In January, 1988, the plaintiff employer filed a bill of complaint praying for damages for breach of contract and negligence for payment of a promissory note and for an injunction enjoining the defendant from violating a noncompetition agreement. The defendant filed an answer as well as a counterclaim, which alleged that the plaintiff made fraudulent misrepresentions to obtain the defendant as an employee and intentionally delayed its transfer of the defendant's license upon terminating his employment. Last September a trial date was set for June 20-21, 1989. In November, the defendant became aware

that this claim might be subject to resolution by arbitration and suggested this alternative to the plaintiff. The plaintiff denied this request to arbitrate, and the defendant filed this motion.

In support of the motion, the defendant contends that this dispute is covered by the Federal Arbitration Act, that the plaintiff's membership agreement with the National Association of Securities Dealers (NASD) constitutes a written agreement to arbitrate, that the dispute is within the scope of the agreement and that the defendant has not waived his rights to arbitrate.

The threshold issue is whether this case is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Section 2 of the act provides that it applies to "a contract evidencing a transaction involving commerce." Section 1 defines commerce to include interstate or international trade.

The federal courts have generally held that a contract between a member of the New York Stock Exchange (NYSE) and its employee is a contract involving interstate commerce. *See, e.g., Bayma v. Smith Barney, Harris Upham and Co., Inc.,* 784 F.2d 1023 (9th Cir. 1986); *Stokes v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 523 F.2d 433 (6th Cir. 1975); *Dickstein v. duPont,* 320 F. Supp. 150, (D. Mass. 1970), *aff'd* 443 F.2d 782 (1st Cir. 1971).

The plaintiff in this case is a member of the National Association of Securities Dealers. Although no cases have specifically held that employment agreements with NASD involve interstate commerce, this court finds no reason to apply a different rule here. NYSE and NASD are both self-regulatory associations of securities dealers who participate in the interstate sale of securities.

The plaintiff contends that federal law does not apply here because Section 1 of the Federal Arbitration Act excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." However, this exclusionary language is aimed at employees in transportation industries and does not apply to securities dealers. *Miller Brewing Co. v. Local No. 9, AFL-CIO,* 739 F.2d 1159 (7th Cir. 1984) *cert. denied,* 460 U.S. 1160 (1985); *Dickstein v. duPont, supra.* This court finds that this dispute involves interstate commerce and is therefore within the Federal Arbitration Act.

The Supreme Court has held that if a dispute is within the coverage of the federal act, then federal law governs the issue of arbitrability, whether the case is in federal or state court. *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1 (1983).

The Supreme Court noted that:

> Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of this section is to create a body of federal substantive law, applicable to any arbitration agreement within the coverage of the act. *Id*.

Once it has been determined that the federal law applies, the next inquiry is whether there is a written contract to arbitrate, as required by Section 2 of the Federal Arbitration Act. The defendant contends that this requirement is satisfied because the membership agreement between the plaintiff and NASD contained an arbitration provision. Although no cases concern the particular conflict here, which is that of an employee versus a member of the association, several cases have relied on the same principle in a slightly different context. In *N. Donald and Co. v. American United Energy Corporation*, 746 F.2d 666 (10th Cir. 1984), the court held that the membership agreement between a member and NASD constituted and agreement to arbitrate that could be enforced by a member against another member. In *Financial House, Inc. v. Otten*, 309 F. Supp. 108 (E.D. Mich. 1973), an agreement between a member and NASD to arbitrate disputes was enforced by a customer against the member. Many other courts have allowed membership agreements to be enforced by third parties, and this court finds that the membership agreement was an agreement to arbitrate within the Federal Arbitration Act.

The court must then decide whether a particular dispute is covered by the agreement to arbitrate. Parties cannot be forced to arbitrate controversies that they have not agreed to submit to arbitration. *United Steelwork-*

*ers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574 (1960).

NASD's Code of Arbitration Procedures provides for arbitration of "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association." It further provides that these disputes "shall be arbitrated under this code, at the instance of . . . a member against a person associated with a member or a person associated with a member against a member." A "person associated with a member" is defined as "any partner, officer, director, or branch manager of such member (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such member, or any employee of such member." 15 U.S.C. Sect. 78(a)(21). As a branch manager and an employee, the defendant is clearly a person associated with a member.

The plaintiff contends that employee disputes are not within the scope of the agreement. Unlike the NYSE which specifically provides for the arbitration of employee disputes, the plaintiff argues that NASD only provides for arbitration of disputes arising out of the "business" of the member. *Merrill Lynch, Pierce, Fenner and Smith v. Hovey,* 726 F.2d 1286 (8th Cir. 1984), addresses this issue. In this case, some of the employees specifically signed employment agreements with arbitration provisions. However, other employees were allowed to compel arbitration even though they did not sign these agreements. The court found that employment disputes did arise out of the "business" of the employer and allowed them to proceed based on the general arbitration provision. This court takes the same position and finds that the dispute here is within the scope of the agreement to arbitrate.

The final issue is whether the defendant has waived his right to arbitration. The bill of complaint was filed on January 29, 1988. An answer and counterclaim were filed on February 26, 1988, and the counterclaim was answered on March 17, 1988. On term day on September 26, 1988, a trial date was set for June 20-21, 1989. The defendant alleges that he first learned of his right to demand arbitration in October, 1988, and he then obtained new counsel. His attorney contacted the plaintiff's attorney in November, and the attorneys exchanged letters. On

February 12, 1989, the defendant became aware that the plaintiff intended to proceed in circuit court when the defendant was served with interrogatories. The defendant then filed this motion on February 24, 1989.

Section 3 of the Federal Arbitration Act provides that the court shall stay the trial of the action pending the arbitration "providing the applicant for the stay is not in default in proceeding with such arbitration." In *Maxum Foundations, Inc. v. Salus Corporation*, 779 F.2d 974 (4th Cir. 1985), the Fourth Circuit noted that:

> although this principle of "default" is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.

*Id.* at 981.

In the *Maxum* case, the court did not find that the defendant had waived its right to arbitration, even though it had filed a third-party complaint and participated in discovery. The court held that mere delay did not constitute waiver. In order to waive the right to arbitration, a party's actions must result in actual prejudice to the party opposing arbitration.

Based upon the court's general reluctance to find a waiver, this Court declines to find that the defendant has waived his rights in this case. There has been no showing of actual prejudice to the plaintiff.

Based upon these conclusions, the Court orders this proceeding to be stayed pursuant to Section 3 of the Federal Arbitration Act.