## COMMONWEALTH *vs.* SCOTT A. McKAY.

Suffolk.   January 2, 1973. — March 7, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Jury and Jurors.   Practice, Criminal,* Empanelling of jury, Charge to jury.   *Evidence,* Of virginity, Of consent.   *Assault.*

In a criminal case where a woman might be excused as a juror upon her representation and subsequent judicial determination that sitting as a juror might cause her embarrassment, it was held on the record that denial of a fair trial did not result in that the judge excused the first woman selected as a juror, without a request by her to be excused.   [221–224]

At the trial of an indictment for assault with intent to commit rape, testimony by the victim that she was a virgin at the time of the assault was properly admitted on the issue of consent, although that issue was not raised by the defendant until after such testimony was presented.   [224–227]

At the trial of an indictment for assault with intent to commit rape, the defendant was not likely to have been prejudiced by testimony by the victim concerning her virginity where a hospital record indicating such fact had been introduced without objection.   [228]

At the trial of an indictment for assault with intent to commit rape, the judge was not obliged to instruct the jury concerning simple assault where the evidence did not warrant a finding of guilt of simple assault.   [228–229]

INDICTMENT found and returned in the Superior Court on August 5, 1971.

The case was tried before *Smith,* J.

The case was submitted on briefs.

*Robert V. Greco* for the defendant.

*Stephen R. Delinsky,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant was convicted of assault with intent to commit rape.   He argues that the judge

committed reversible error because (1) women were improperly excluded from the jury, (2) evidence that the victim was a virgin was improperly admitted when her reputation for chastity had not been challenged by the defendant, and (3) the judge failed to instruct the jury properly on the possibility that they might return a verdict for the lesser included offence of simple assault.

The incident occurred in Franklin Park in Boston during the early morning hours of a summer night in 1971. The defendant and the victim had attended a casual gathering of young people on top of a hill in the park where beer had been consumed. The defendant, who was about twenty years old, was ostensibly walking the girl home. She was sixteen. They had not met previously. Most of the young people at the casual gathering were acquaintances of hers. The defendant apparently knew only a few of the persons at the gathering.

The details of the actions of the victim and the defendant are not important to the issues presented to us. It is sufficient to say that, in response to a call that a woman was screaming in the park, a Boston policeman searching the area found the defendant lying on top of the victim, each substantially naked from the waist down. The defendant testified that he had hit the girl to settle her down (there was evidence that she had bruises on her face), that she consented to his subsequent advances, but that because he had been drinking, he was incapable of having intercourse with the girl although he had intended to. She testified that he punched her and forced himself upon her and that she did not consent in any respect to what the defendant did. Other facts bearing on the issues argued to us are set forth below.

1. The defendant first argues that the judge of his own volition excused the first woman who was selected as a juror and that action influenced other women not to serve, with the result that the defendant was denied a fair trial. Because only bench conferences were recorded during the empanelling of the jury, the record does not show the circumstances in which the first woman whose

name was drawn was excused from jury duty. We do know, however, that one woman did in fact sit on the jury. We also know that, at a bench conference at some undefined point in the course of the empanelling of the jury, counsel for the defendant asked the judge to note "my exception to your Honor's excusing juror 216, the first female called, without explaining whether or not she wishes to sit or not wished to serve [*sic*]." The judge made no responsive comment, nor was he obliged to. The statement of counsel is not wholly clear as to what appeared to him to have happened.

This prosecution involved a proceeding in which a woman could have been excused from sitting as a juror upon her representation and a determination by the judge that she might be embarrassed if she were to sit.[1] We assume that the judge excused the first woman without explaining to her that she had a right to request that she be excused. Apparently further potential women jurors were excused by the judge and clearly one was seated, in circumstances not directly explained on the record.[2] Defence counsel did not take an exception to the excusing of any other woman, but he did take an exception to the denial of a motion for a mistrial on the ground that "[t]he defendant is not being tried by a representative sampling of the community, having systematically excused the females." A colloquy between counsel and the judge at this point in the trial suggests that after the first woman to be called was excused, each woman subsequently called as a juror was notified of her right to represent to the court that she would be embarrassed by

---

[1] Under G. L. c. 234, § 1A, inserted by St. 1949, c. 347, § 2, "No woman shall be required to serve in the trial of any prosecutions under . . . [G. L. c. 265, §§ 22–24, inclusive] if, upon her representation it appears to the presiding justice that she would be likely to be embarrassed by hearing the testimony or by discussing the same in the jury room." Assault with intent to commit rape is a prosecution under G. L. c. 265, § 24.

[2] We believe that the empanelling process should be recorded by the stenographer but that it need not be reproduced in the transcript unless an issue relating to the empanelling of one or more jurors is presented in the case.

serving.   The defendant argues that the action of the judge on his own in excusing the first woman called set a pattern because it may have affected the decision of other women as to whether they would sit.

Our law grants wide discretion to the judge in the jury selection process.   G. L. c. 234, § 1A (first paragraph). In the absence of action or inaction which constitutes a denial of constitutional rights (see *Ham* v. *South Carolina,* 409 U. S. 524) or which constitutes an error of law, such as an abuse of discretion, we will not interfere with the trial judge in the jury selection process.   On this record there is no basis to conclude that the judge acted improperly.   A judge may properly excuse a venireman even in the absence of a defendant and his counsel.   *Commonwealth* v. *French,* 357 Mass. 356, 400.   There was no systematic exclusion of a particular class of potential jurors.

Under G. L. c. 234, § 32, an irregularity in the empanelling of jurors is not sufficient to set aside a verdict unless the objecting party has been injured thereby. Where, at the request of one party, a judge has improperly excluded members of a class of persons from service on a jury, thereby making that party's peremptory challenges relatively more valuable, we have held that the other party is entitled to a new trial.   *Searle* v. *Roman Catholic Bishop of Springfield,* 203 Mass. 493.   In the case before us, however, there is no such general disqualification of a class of persons, the Commonwealth did not request the discharge of the one woman juror who was not excused, and there is no demonstration, as there was in the *Searle* case, that a party's peremptory challenges were made relatively more valuable by the action of the judge.

Even if the judge did improperly excuse the first woman whose name was called as a juror without a prior request on her part (an issue which cannot be determined in the defendant's favor on this record), there is no indication that the defendant was denied a fair trial as a result.   The defendant does not challenge the statute

under which women may be excused from sitting in a case of this sort.[3]   It would be purely conjectural to conclude that the first woman would have set a different "pattern" for women subsequently drawn as jurors, if she had been notified of her statutory right to request that she be excused. Indeed whatever pattern, if any, was set, it was not so strong as to influence the woman who did serve as a juror to conform to it.   Moreover, it is far from apparent that the presence of more women on the jury would have benefited the defendant, whose conduct, even on his own testimony, was far from exemplary.   The possibility that a woman juror would have identified sympathetically with the alleged victim seems at least as great as the possibility that, as the defendant contends, "women better than men would have been able to appreciate the propensity or need of the prosecuting witness to have lied in this situation."

2. The defendant next contends that it was error for the judge to allow the principal witness to testify, in response to a question on direct examination, that she was a virgin at the time of the alleged offence.   It was, of

---

[3] Although the defendant raised constitutional objections in his assignment of error on the jury empanelling issue (citing art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the Constitution of the United States as it applies the Sixth Amendment to the States), he has not argued any constitutional grounds to us in support of his position. He has not contested the different classification accorded women by G. L. c. 234, § 1A. See Fay v. New York, 332 U. S. 261, 277–278, in which a challenge to the exclusion of women from the jury panel was rejected, in part because a woman did in fact sit on the jury, and Hoyt v. Florida, 368 U. S. 57, where different treatment of women in the jury selection process was upheld.   Even if there were an intentional and systematic exclusion of women from the jury, it is not clear that the defendant, a man, would have presented a Federal constitutional issue which would have been decided in his favor. See Alexander v. Louisiana, 405 U. S. 625, 633, where the Supreme Court of the United States did not reach the issue whether a male defendant has any Federal constitutional right to object to the exclusion of women from a jury in a State court trial.   Compare Ballard v. United States, 329 U. S. 187, 194–195, as to such an exclusion in a Federal court, where it was held to be bad under the general superintendence power of the United States Supreme Court.   The defendant's objections argued to us on the jury empanelling issue concern asserted violations of G. L. c. 234, §§ 1 and 1A.

course, incumbent on the prosecution to prove that the actions of the defendant were carried on without the consent of the victim. *Commonwealth* v. *Dies,* 248 Mass. 482, 489. The girl had already testified that she had never seen the defendant before that day and that she was engaged to be married about two months later. In a prosecution for assault with intent to rape where the consent of the victim is in issue, it is not error to admit evidence that the victim was a virgin. The fact that the victim was a virgin, if the jury so found, is clearly relevant on the material and important issue whether in the circumstances she would be inclined to consent to the defendant's conduct.

At the time the victim was asked about her virginity, consent had not been presented as a defence. If the defence had not been based on consent but had been based on an alibi, for example, this testimony of the witness might have been improper because where consent is not in issue, the victim's virginity or lack of it would probably have no bearing on any litigated issue and might confuse and prejudice the jury. See *State* v. *Borde,* 209 La. 905, 910. However, the issue of consent was later raised by the defendant (as it seemed obvious it would be), thus eliminating any prejudice to the defendant which would otherwise have resulted from the victim's testimony concerning her virginity. Better practice would call for the introduction by the prosecution of any evidence concerning the witness's virginity only after the question of her consent had been raised on cross-examination, by the defendant's testimony or otherwise.

Testimony by the victim that she was a virgin at the time of the incident has been admitted in other States where the question of consent was in issue. See *State* v. *Bradley,* 72 Ariz. 16 (where the defendant did not even challenge the victim's testimony but did challenge expert medical testimony to the same effect); *People* v. *Ross.* 179 Cal. App. 2d 684, which does not follow an old California case (*People* v. *O'Brien,* 130 Cal. 1) which on

rather obscure reasoning concluded that the admission of the victim's testimony that she was a virgin was reversible error.

An issue which in theory is much the same as the one before us arises when the prosecution in a rape case, or in a case involving assault with intent to commit rape, offers expert medical evidence tending to show that the victim was a virgin at the time of the alleged crime. Courts in other States have held that, where the issue of the consent of the victim was involved, medical evidence tending to show the victim's apparent loss of her virginity is admissible. *State* v. *Bradley*, 72 Ariz. 16. *People* v. *Pollock*, 25 Cal. App. 2d 440. *Russom* v. *State*, 105 So. 2d 380 (Fla.). *Edmondson* v. *State*, 146 So. 2d 395 (Fla.). *Gifford* v. *People*, 148 Ill. 173, 177–178. *State* v. *Aveen*, 284 Minn. 194. *Myers* v. *State*, 105 Tex. Crim. App. 426. See Annotation, 35 A. L. R. 3d 1452; Underhill, Criminal Evidence (5th ed.) § 760 (p. 1747). Such evidence may tend to show "the great unlikelihood of the prosecutrix having given her consent under such circumstances to defendant, a stranger she had just met." *State* v. *Bradley*, 72 Ariz. 16, 21. Although such evidence may be inflammatory in certain cases, where the defence of consent is involved, it is "neither unreasonable nor unfair for the prosecution to anticipate the obvious defense strategy and to introduce this evidence upon its case in chief." *State* v. *Aveen*, 284 Minn. 194, 197.

The defendant contends that allowing the witness to testify as to her virginity runs contrary to the principles lying behind our established rule in rape cases that, "[a]lthough evidence of a general reputation for unchastity may be admitted in rape cases, evidence of instances of prior intercourse with other persons is inadmissible." *Commonwealth* v. *Gardner*, 350 Mass. 664, 668. See *Commonwealth* v. *Regan*, 105 Mass. 593; *Commonwealth* v. *Kendall*, 113 Mass. 210. The defendant contends that if specific prior acts of intercourse with others may not be shown by a defendant, evidence as to the witness's vir-

ginity may not be shown by the prosecution unless the defendant raises the question of the witness's reputation for lack of chastity.

We believe that there is a rational basis for distinguishing between admitting evidence that the victim was a virgin and excluding evidence of specific prior events of intercourse in which the victim participated. Our rule that prior specific instances of intercourse may not be presented by the defence is justified on the ground that collateral questions relating to those specific events would prolong the trial and divert the attention of the trier of fact from the issues. See *Miller* v. *Curtis*, 158 Mass. 127, 131. The victim's lack of virginity, moreover, has little probative value on the issue of consent because the victim's consent to intercourse with one man does not imply her consent in the case of another. Underhill, Criminal Evidence (5th ed.) § 767 (pp. 1766–1767). On the other hand, the status of the victim as a virgin at the time of the alleged crime has far more probative value on the issue of consent. In addition, the prospect of the consideration of collateral matters is not raised to the same degree when testimony of the victim's virginity is introduced as it is when the defence undertakes to present evidence of one or more incidents of prior acts of intercourse in order to establish the prosecuting witness's unchaste character.[4]

---

[4] It is true, however, that the defendant should not be foreclosed from challenging evidence tending to show that the victim was a virgin. When the question of the consent of the victim is raised and the prosecution introduces evidence tending to show that the victim was a virgin, the virginity or lack of virginity of the witness then becomes a relevant consideration on the material issue of consent. The defendant in that circumstance is entitled within reasonable limits to introduce extrinsic evidence tending to show that the victim was not a virgin because she had had intercourse with her consent previous to the time of the occurrence for which the defendant is being tried. This evidence which would tend to impeach testimony as to the virginity of the victim (*Commonwealth* v. *Gardner*, 350 Mass. 664, 668) would bear as well on a fact made relevant in the case. That evidence, therefore, would not be inadmissible on the ground that extrinsic evidence on a collateral matter may not be introduced for impeachment purposes except in the discretion of the judge. See Wigmore, Evidence (Chadbourn rev.) § 1003; Leach and Liacos, Handbook of Massachusetts Evidence, 113.

Although it is not essential to our decision, we note that the defendant was not likely to have been prejudiced by the testimony of the witness that she was a virgin. Without objection a hospital record was introduced in evidence, and from it the medical record of an examination of the witness was read to the jury, which included the finding of a "[p]atent hymen." Even prior to the Commonwealth's opening defence counsel stated to the judge that he had no objection to the Commonwealth's indicating to the jury that the hospital record would be introduced in evidence.

3. The defendant lastly contends that the judge should have instructed the jury on the possibility of returning a verdict of guilty of the offence of simple assault, a crime which is a lesser included offence within the crime of assault with intent to commit rape. *Commonwealth* v. *Fischblatt,* 4 Met. 354, 356. *Commonwealth* v. *McCarty,* 165 Mass. 37, 38. See *Commonwealth* v. *McCan,* 277 Mass. 199, 202–203 (assault is involved as subsidiary and incidental to rape, as is assault and battery). Cf. *Commonwealth* v. *Thompson,* 116 Mass. 346, 348 (assault and battery).

The judge is not obliged to charge a jury concerning a lesser included offence if the evidence would not warrant a finding that the defendant was guilty of that offence. *Commonwealth* v. *Campbell,* 352 Mass. 387, 392. Here the evidence provides no "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense" of assault. Am. Law Inst., Model Penal Code, § 1.07 (5) (Proposed Official Draft, 1962). The victim and the defendant differed as to the circumstances, but both testified that he struck her. If there was any crime, it was at least an assault and battery, and not just an assault. Therefore, the defendant's exception to the refusal of the judge to instruct on the crime of assault has no merit.

The judge instructed the jury that the indictment was broad enough to include the crime of assault and battery. Reading the judge's charge as a whole, assuming the

defendant has properly reserved his rights on this question, we believe that the jury were adequately instructed that they had the option of finding the defendant guilty of only the lesser crime of assault and battery.

*Judgment affirmed.*