COMMONWEALTH *vs.* ANTONIO D. GOUVEIA.

Middlesex.    November 2, 1976. — December 21, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Evidence,* Collateral matter.    *Rape.    Practice, Criminal,* Comment by prosecutor, Mistrial.

At the trial of indictments charging rape and an unnatural act, there was no error in the exclusion of evidence as to the victim's prior sexual intercourse with a person other than the defendant.  [568-570]

At a trial of indictments charging rape and an unnatural act, even though the prosecutor's remarks in his closing argument were reasonably susceptible of being interpreted as a comment on the defendant's failure to take the stand, a mistrial was not required where the judge gave curative instructions.  [570-572]

INDICTMENTS found and returned in the Superior Court on February 6, 1974.

The cases were tried before *Hayer, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Fern L. Nesson* for the defendant.

*James W. Sahakian,* Special Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.    The defendant appeals from convictions of rape and an unnatural act, and argues two assignments of error: (1) exclusion of evidence of prior sexual intercourse by the victim, and (2) denial of his motion for a mistrial after the prosecutor in his closing argument asserted that there was no evidence to refute the victim's testimony as to what happened when she and the defendant were alone together. We hold that there was no error in excluding evidence of prior sexual acts between the victim and a person other than the defendant. We also hold that in all the circumstances of this case, the prosecutor's closing argument, though improper in view of the defendant's failure to testify in his own defense, did not require a mistrial. We therefore affirm the convictions.

The case for the Commonwealth consisted almost entirely of the testimony of the victim, which we summarize. She was nineteen years old and lived and worked in Billerica. On the evening of Saturday, August 25, 1973, she drove her automobile to a bar in Lowell and had two or three drinks with friends and with a young man whom she met there and who invited her to a family birthday party. She drove him to the party, a few minutes away, arriving about 11:30 to 12 P.M., and found approximately thirty people there. About a half hour later, she felt sick and she and her escort went out and got into the back seat of her car. He passed out, she vomited, and she discovered that her wallet and car keys were missing. She got out of the car and spoke to others who said they would look for the car keys.

At this point the defendant, whom she did not know, suggested that she could lie down in his van, parked nearby, and she did so. She was there for about two hours, during which time several men looked in, and one made sexual advances which she repulsed. Finally, the defendant got into the van and committed the crimes charged. After ten or fifteen minutes the defendant "gave up"; she put her jeans back on; and she went back to her car, leaving her underwear in the van. She rolled up the windows and locked the doors of her car, and a woman came over and

screamed at her. Others were standing around. Later the defendant came back, said the woman was going to beat her up, and offered to give her "a ride to get out of there." They got into the van, and he drove her to within a quarter of a mile of her home. He gave her the wrong name of the street where the party was, and he falsely said the van was not his. She noted the license number and wrote it down when she arrived home about 5:15 A.M.

About 7 or 7:30 A.M. she called a friend, and he drove her to Lowell to look for her car. The same morning, after searching without success, they went to the Lowell police department. She gave the police the license number of the van and learned the defendant's name. About a week later the police recovered her car, and her wallet was found in a mailbox.

The defendant stipulated that he was at the party with his van, and that he drove the victim home. The escort, six women, and the husband of one of them testified for the defendant. All the witnesses were related to the escort by blood or marriage and all but one testified that they had known the defendant for many years. He did not testify.

In September, 1975, the defendant was convicted of both rape and an unnatural act, and was sentenced to nine to twelve years for rape and to a lesser concurrent sentence for an unnatural act. An appeal to the Appellate Division of the Superior Court resulted in concurrent sentences of three to five years. The defendant appealed pursuant to G. L. c. 278, §§ 33A-33G, and we allowed the parties' joint application for direct appellate review, which focused on the admissibility of evidence of prior sexual acts by a rape victim.

1. *Evidence of prior sexual acts.* The victim testified on direct examination that she was outside in the back seat of her car with her escort about two hours before the crimes took place. On cross-examination she said that she was talking to him, and that he kissed her and "attempted to make a pass" at her, "and that was it." She denied having sexual intercourse with him, but the judge sus-

tained an objection to the question and instructed the jury to disregard it. She denied that she was undressed.

Defense witnesses testified that the victim and her escort were in the back seat of her car, and that he passed out and was carried into the house. They testified that both the victim and her escort were completely undressed, and two of them testified to obscene behavior on her part. Several also testified that she got out of the car wholly or partly undressed and walked down the street. The judge excluded questions whether she and her escort engaged in sexual intercourse.

The defendant accepts our general rule that in a rape case, although evidence of a general reputation for unchastity may be admitted, evidence of instances of prior intercourse of the victim with persons other than the defendant is inadmissible. *Commonwealth* v. *Gardner,* 350 Mass. 664, 668 (1966), and cases cited. But he argues that the rule should be limited to cases where it is "justified on the ground that collateral questions relating to those specific events would prolong the trial and divert the attention of the trier of fact from the issues." *Commonwealth* v. *McKay,* 363 Mass. 220, 227 (1973). Here, he says, the prior act was close in time and nature to the crimes charged, and it was therefore admissible both to impeach the victim's credibility and to prove her consent.

As to impeachment, the Commonwealth did not introduce any evidence with respect to the victim's sexual intercourse with her escort, and the evidence offered by the defendant on sexual intercourse was not inconsistent with evidence introduced by the Commonwealth. The judge went quite far in permitting cross-examination of the victim as to her relations with her escort, and we see no abuse of discretion in his stopping short of inquiry as to sexual intercourse. As to extrinsic evidence, he properly applied the rule that such evidence on a collateral matter may only be introduced for impeachment purposes in the discretion of the judge. See *Commonwealth* v. *McKay,* 363 Mass. 220, 227, n.4 (1973). Cf. *Commonwealth* v. *Doherty,* 353 Mass. 197, 213-214 (1967), cert. denied, 390 U.S. 982

(1968), overruled on other grounds in *Connor* v. *Commonwealth,* 363 Mass. 572 (1973). Contrast *Commonwealth* v. *Franklin,* 366 Mass. 284, 288 (1974).

On the issue of consent, we stand by the principle that "the victim's consent to intercourse with one man does not imply her consent in the case of another." *Commonwealth* v. *McKay, supra* at 227. At least in the circumstances here, a prior consent close in time and place might negate rather than create such an implication of subsequent consent. We need hardly add that the defendant had no right to appeal to the jury on the basis that by her conduct the victim had forfeited any claim to protection from rape.

The defendant further complains that proof of the victim's "obscene and public actions, short of intercourse, ... strongly and erroneously implied to the jury that no such intercourse did occur," and that subsequent consent to intercourse with the defendant therefore seemed "most improbable." It is at least equally likely that the jury disbelieved the defense testimony, or that they thought, as we do, that prior consent was irrelevant to subsequent consent. In any event, the evidence of "obscene and public actions" was all introduced by the defendant, and he is in no position to complain.

The defendant argues that if our rule excludes the "demonstrably relevant evidence" offered in this case, "merely to protect the dignity of the witness," it denies the defendant his right to a fair trial and violates the United States Constitution. We have said enough to indicate that no relevant evidence was excluded. We do not regard the protection of the dignity of witnesses as illegitimate. See *Commonwealth* v. *Bailey,* 370 Mass. 388, 397 (1976). But that is not the purpose of the rule here considered.

2. *The prosecutor's closing argument.* At least six times during his closing argument, the prosecutor adverted to the fact that the only testimony about what happened in the van came from the victim. Illustrative is the following: "And I submit to you, ladies and gentlemen, very respectfully, that on the evidence and on the testimony of this girl — and there is no evidence to the contrary in this

case; there isn't a shred of evidence to the contrary. Several witnesses told you everything but what happened between Gouveia and her. Everything but."

The defendant did not object during the argument, but moved for a mistrial when it was completed. The judge said, "I'll clear it up in my charge. I would have cleared it up if you made the objection at that particular time, but I didn't interrupt him because I don't know what your thinking is." The prosecutor said that he was arguing that the defense witnesses did not testify to the material issue in the case, and that he in no way intended to comment on the defendant's failure to testify. The motion was denied, and the judge included in his charge instructions that no inference was to be drawn from the defendant's failure to testify, that the arguments of counsel were not evidence, that he had no responsibility to prove his innocence, and that he had to be proved guilty by proof beyond a reasonable doubt as to each of the essential allegations. No exception was taken to these aspects of the judge's charge.

Whatever the prosecutor's intent, we think his remarks were "reasonably susceptible of being interpreted as a comment on [the defendant's] failure to take the stand which, of course, was improper." *Commonwealth* v. *Domanski*, 332 Mass. 66, 69 (1954). In such cases the better practice is for the judge to intervene on his own motion. Indeed, the United States Court of Appeals for the First Circuit has announced that it will rule such comments "prejudicial as matter of law," unless the judge "interrupts the argument, instructs the jury fully on the defendant's constitutional right not to testify and the jury's obligation not to draw unfavorable inferences and, in addition, states to the jury that the U. S. Attorney was guilty of misconduct." *United States* v. *Flannery*, 451 F.2d 880, 882 (1st Cir. 1971).

Our practice has been less strict, and we are not prepared to follow the Federal example in all its rigidity. We no longer hold, as we did in *Commonwealth* v. *Homer*, 235 Mass. 526, 536 (1920), that an objection to closing argu-

ment necessarily comes too late if made after the argument is finished. But we ordinarily insist on exceptions with respect to any inadequacies in curative instructions. *Commonwealth* v. *Cabot*, 241 Mass. 131, 151 (1922). Cf. *Commonwealth* v. *Burnett, ante,* 13, 16-17 (1976). Denial of a mistrial and reliance on curative instructions may be proper, in the judge's discretion, even in a case of clearly improper argument by a prosecutor. *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 536-538 (1971). See *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 644-645 (1974).

In the present case the judge may have thought that the prosecutor's impropriety was not deliberate. Contrast *Commonwealth* v. *Redmond,* 370 Mass. 591, 597 (1976); *Commonwealth* v. *Graziano,* 368 Mass. 325, 332 (1975). Defense counsel in his summation had argued that the victim's testimony was preposterous, and the prosecutor's argument emphasized the issue of her credibility. The judge may have thought that defense counsel's failure to object was a tactical decision, based on a belief that the prosecutor's argument was helping the defense. In these circumstances, we find no abuse of discretion in the judge's decision to rely on curative instructions rather than to declare a mistrial.

*Judgments affirmed.*