SYLVESTER ELDER vs. COMMONWEALTH.

Suffolk. September 15, 1981. — January 20, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Constitutional Law*, Double jeopardy. *Practice, Criminal*, Mistrial, Double jeopardy, Comment by prosecutor. *Supreme Judicial Court*, Superintendence of inferior courts.

Review by the full court of a single justice's ruling denying relief from a trial judge's finding that a retrial of the defendant in a criminal case was not barred by the double jeopardy principle was proper because the defendant addressed to the full court a claim for relief pursuant to this court's powers under G. L. c. 211, § 3, granting general superintendence powers over inferior courts. [132]

This court would exercise its general superintendence powers pursuant to G. L. c. 211, § 3, to review an interlocutory ruling in a criminal case where the defendant's right to be free from being placed twice in jeopardy was significant, and his petition presented a claim having substantial merit, and a refusal by this court to review before trial the claim of rights under the double jeopardy clause would, because of the nature of the guaranty, result in the irremediable denial of such rights. [132-133]

Where a district attorney stated to news reporters that a particular judge favored defendants over prosecutors and was lenient, at a time when he knew that the defendant's jury-waived trial was before the judge to whom his statements referred, and the defendant moved for a mistrial, neither of the grounds advanced by the trial judge in support of his order for a mistrial, a danger of reversal on appeal and a possible public perception of bias, made a mistrial manifestly necessary and, therefore, neither was sufficient to justify the trial judge's declaration of a mistrial. [135-136]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 12, 1981.

The case was heard by *Nolan, J.*

*Linda J. Thompson (John M. Thompson* with her) for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  Sylvester Elder (hereinafter referred to as the defendant) was charged with four counts of statutory rape of a child.  Trial was had, without jury, to a Superior Court judge, who took the case under advisement.  Subsequently the trial judge declared a mistrial.  The defendant is before this court on a complaint seeking either declaratory relief, or relief under this court's general superintendence power (G. L. c. 211, § 3), contending that principles of double jeopardy prohibit his retrial on these charges.  A single justice of this court denied relief and the defendant appealed to the full court.

We conclude that there was no sufficient reason for the declaration of a mistrial, and consequently the case should now be decided by the trial judge and he should order the entry of appropriate judgments. We do not reach the double jeopardy argument of the defendant.

We summarize the facts as, for the most part, included in the findings and rulings of a second Superior Court judge (hereinafter referred to as the motion judge) who, after the mistrial was declared, denied, after hearing, the defendant's motion to dismiss the charges.

The defendant went to trial, jury-waived, on March 13, 1981.  He was and is represented by an experienced trial lawyer.  The evidence and final arguments concluded on Thursday, March 19, 1981.  The trial judge took the case under advisement indicating that a decision would be announced on Monday, March 23, 1981.  The trial was briefly interrupted on March 19, 1981, in order that the judge might dispose of an unrelated criminal matter (sentencing after jury verdict in an assault and battery case).  The district attorney for the county of Hampden was present during that sentencing.

Later, on the same day, the district attorney stated to the press his opinion " (a) that the particular judge favors defendants over prosecutors, (b) that defense lawyers who come before the particular judge should advise clients to

proceed jury-waived where they will fare better because the judge will not be forced to overrule a jury verdict in order to be lenient, and (c) that the law should be changed to provide for the election rather than appointment of judges." The expressed opinions appeared in a news item in the Springfield Morning Union Friday, March 20, 1981, under the caption "Guilty Cop's $100.00 fine draws anger of district attorney." The Union is a paper of large and general circulation in Hampden County. It is not clear whether the press conference occurred while Elder's trial was ongoing, on Thursday, March 19, or after the case had been taken under advisement. In either event the district attorney was aware that the Elder case was before the judge of whom he was complaining and that it was being heard jury-waived.

On Monday, March 23, 1981, in a recorded lobby conference, counsel for the defendant, after expressing his personal and professional confidence in the ability of the judge to decide the case impartially, stated that his client "definitely feels that we ought to request a mistrial." Shortly thereafter in open court, after renewing his expression of personal confidence in the court, the defendant's counsel moved for a mistrial. The written motion expressly stated that the defendant did not waive double jeopardy rights secured to him by the Fifth and Fourteenth Amendments to the United States Constitution. The defendant asserted as grounds for the motion that the government's "conduct at issue can fairly be construed as an effort to be afforded a more favorable opportunity to convict the Defendant, whether or not a mistrial is declared"; that "serious questions may now be raised regarding the propriety of any verdict returned by the Court"; that the trial judge "is no longer in a position to carry out the twofold mandate of the judicial system: that justice not only be done, but that it also appear to be done"; and that the government "by its conduct has deprived the defendant of his right to an impartial decision."

The trial judge then conducted a hearing to determine "among other matters whether the declaration of a mistrial is a manifest necessity." Evidence was taken from the re-

porters involved and the judge prepared and filed findings, rulings, and order on the defendant's motion for mistrial. The trial judge ordered a mistrial and stated the following reasons. "Given the present posture of the circumstances, circumstances created solely by the District Attorney, any decision of the Court will be perceived by some, perhaps many, as being suspect. While the Court knows that in so far as is humanly possible the decision reached would be a true judgment on the law and the evidence, it recognizes that two unnecessary results may obtain. They are the opening of an avenue of appeal should the judgment be in favor of the Commonwealth, and second, perhaps more important, it will appear that even-handed justice has not been done. For the reasons stated, a declaration of mistrial is a manifest necessity. No harm, tactical or otherwise, will be occasioned to the defendant by a re-trial."

A second Superior Court judge subsequently denied the defendant's motion to dismiss. In doing so, the motion judge found: (1) "The public utterances [of the district attorney] were capable of causing a reasonable apprehension on the part of the trial judge that whatever his decision in the *Elder* case it could and perhaps would be seen by a significant number of people as having been influenced by the District Attorney's statements"; (2) "The defendant Elder is totally blameless for the incident which precipitated the declaration of mistrial"; (3) "Elder has been inconvenienced, and has been caused to suffer the continuing mental hardship associated with an unresolved case. His finances have been exhausted. He is indigent. Extraordinary circumstances exist which permit the appointment of counsel under Superior Court Rule 53"; (4) "The defendant made a tactical choice to move for a mistrial"; (5) "The affidavit, news releases, and transcript do not warrant a finding that the published statement of the District Attorney were motivated by a desire to influence the Judge's decision in the *Elder* case, nor to cause a mistrial in order to obtain a different forum"; and (6) "A retrial of the defendant is not barred by the Double Jeopardy principle."

The defendant sought relief before a single justice of this court, and this appeal is from the single justice's denial of relief.

1. The Commonwealth argues, preliminarily, that review by the full court of the single justice's ruling denying relief is not available to the defendant. We disagree. The defendant, at the very least, is properly before us because he addresses to the full court a claim for relief pursuant to this court's powers under G. L. c. 211, § 3, which grants to this court general superintendence power over all inferior courts. See *Commonwealth* v. *Dunigan*, 384 Mass. 1, 4 (1981).

The Commonwealth further argues that, even if the case is properly here, we should not grant relief, because our extraordinary superintendence powers will not ordinarily be exercised to review interlocutory rulings in criminal cases, since the rights of criminal defendants generally are fully protected through the regular appellate process. See *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 61 (1977). Again, we disagree. We think the language of *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978), is dispositive on this issue: "However, in the most exceptional circumstances, our power under this statute will be exercised to review an interlocutory ruling. *Corey* v. *Commonwealth*, 364 Mass. 137, 138 (1973). Specifically, the defendant must show (1) that he has a substantial claim that an important substantive right, belonging to him, is being violated, *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 526 (1974), and (2) that the error is irreversible, such that an order for a new trial in the normal process of appeal would not place him in statu quo. *Whitmarsh* v. *Commonwealth*, 366 Mass. 212, 215 (1974), appeal dismissed, 421 U.S. 957 (1975). We believe that such a showing has been made here. The right to be free from being placed twice in jeopardy is significant, and the defendant's petition presents a claim that has substantial merit. More important is the fact that a refusal by us to review before trial the claim of rights under the double jeopardy clause would, because of the

nature of the guaranty, result in the irremediable denial of such rights."

2. We turn now to the issue whether the trial judge could appropriately declare a mistrial in this case. We conclude that there was no sufficient reason for the declaration of a mistrial.

The defendant is entitled to pursue his trial to completion before the original trier of fact. *United States* v. *Dinitz*, 424 U.S. 600, 606-611 (1976). However, a trial judge may appropriately declare a mistrial when "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). In these circumstances, the defendant's rights are "subordinated to the public's interest in fair trials designed to end in just judgments." *Wade* v. *Hunter*, 336 U.S. 684, 689 (1949). Consequently, we inquire whether the grounds cited by the judge in support of his mistrial order — a danger of reversal on appeal and a possible public perception of bias — made a mistrial manifestly necessary. "Manifest necessity" is a general standard, and its application depends largely on the circumstances of each case. *Arizona* v. *Washington*, 434 U.S. 497, 506 (1978). *Illinois* v. *Somerville*, 410 U.S. 458, 462 (1973). We believe that in the present case neither of the grounds advanced by the judge was sufficient to justify declaration of a mistrial.

Although a procedural error that would lead inevitably to reversal of a conviction on appeal may sometimes justify a mistrial (compare *Illinois* v. *Somerville, supra* at 469, 471, with *Downum* v. *United States*, 372 U.S. 734 (1963), and *Jones* v. *Commonwealth*, 379 Mass. 607, 619-620 (1980)), a possible "avenue of appeal" does not approach the degree of necessity that permits subordination of the defendant's interests in pursuing his trial to completion. Nor do we believe that the public perception of bias with which the judge was concerned gave rise to manifest necessity. There can be no doubt that actual bias among jurors renders mistrial manifestly necessary to preserve the ends of public justice. *Thompson* v. *United States*, 155 U.S. 271 (1894). *Simmons*

v. *United States*, 142 U.S. 148 (1891). *Jones* v. *Common-wealth*, 379 Mass. 607, 618-619 (1980). The same principle would appear to apply to judicial bias in a bench trial. *Cornish* v. *State*, 272 Md. 312 (1974). Contra, *MacPherson* v. *State*, 533 P.2d 1103, 1109 (Alas. 1975); *Scott* v. *Municipal Court for the Beverly Hills Judicial Dist.*, 17 Cal. App. 3d 885, 888 (1971). But see *T.P.B.* v. *Superior Court*, 66 Cal. App. 3d 881, 885 (1977). However, we discern no precedent, and can conceive of no good reason, at least upon the facts of this case, to support our going beyond the question of actual bias to establish public perception as a basis for a finding of manifest necessity.

The defendant's motion for a mistrial relied upon the same grounds of public perception which the judge recited in his order and which we have concluded to be inadequate. Thus, the defendant stated in his motion that "serious questions may now be raised as to the propriety of any verdict returned by the Court" and "that [justice must] appear to be done." However, the defendant also stated that he had been "deprived of his right to an impartial decision." Beyond doubt, if the judge was not capable of bringing impartial judgment to the case, a mistrial would be justified, even required, in the circumstances shown here. However, the judge, in his order for a mistrial, expressly disclaimed that he had such a state of mind ("the Court knows that insofar as is humanly possible the decision reached would be a true judgment on the law and the evidence"). Thus the defendant's motion offers us no adequate basis for the declaration of the mistrial.

It appears clear to us that the trial judge declared the mistrial upon the motion of the defendant, and not sua sponte. In the circumstances here this fact is immaterial since, in any event, there was no adequate ground for the declaration of a mistrial, and particularly since there is no reason why this jury-waived proceeding should not now be completed.[1]

---

[1] If it were a jury trial that had been thus interrupted, its completion would now, of course, be impossible. In that event, our inquiry here as to

Nothing remains to be done except for the judge to decide the case and order appropriate judgments to be entered. This in turn will satisfy the right of the defendant to have this case proceed to a conclusion. The defendant may, of course, preserve all appellate rights seasonably asserted by him. It follows that we need not here reach the double jeopardy arguments of the defendant.

3. Finally, we comment, not upon the content of the district attorney's remarks, or his privilege to make them, but upon the timing of his statements. His choice, as to the time to speak, impeded the interests of the court and the defendant, as well as the very public interest which, presumably, he would now assert his comments were intended to promote. Prosecutors, like all lawyers, must have careful regard for the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, particularly as shown in S.J.C. Rule 3:07, DR7-107(D), as appearing in 382 Mass. 768, 788 (1981) (concerning public statements "likely to interfere with a fair trial"); DR7-107(E), as appearing in 382 Mass. at 790 (concerning public statements "reasonably likely to affect the imposition of sentence"); and DR8-101(A) (2), as appearing

---

retrial would necessarily concern the principle of double jeopardy. The issue whether the mistrial was ordered on the defendant's motion, as well as the circumstances relevant to the motion, would then be crucial. The controlling principle announced in the decisions of the United States Supreme Court is that reprosecution of a defendant who has successfully moved for a mistrial is not barred, so long as the government did not deliberately seek to provoke the mistrial request. *United States* v. *Dinitz*, 424 U.S. 600, 611 (1976). *United States* v. *DiFrancesco*, 449 U.S. 117, 130 (1980). Several United States Courts of Appeals have concluded that there is former jeopardy only when there was a specific intent by the prosecutor to force the motion for mistrial — when the prosecutor's actions were "calculated to provoke mistrial requests in order to harass the accused by repeated prosecutions or to afford the prosecution a more favorable opportunity to convict the defendant." *United States* v. *Nelson*, 582 F.2d 1246, 1249 (10th Cir. 1978), cert. denied, 439 U.S. 1079 (1979). See, e.g., *United States* v. *Roberts*, 640 F.2d 225, 228 (9th Cir.), cert. denied, 452 U.S. 942 (1981). Other Courts of Appeals have required only proof of bad faith, or even gross negligence of the prosecutor. See, e.g., *United States* v. *Enoch*, 650 F.2d 115, 117 (6th Cir. 1981); *United States* v. *Zozlio*, 617 F.2d 314, 315 (1st Cir. 1980). See also *United States* v. *Green*, 451 U.S. 929, 931-932 (1981) (Marshall, J., dissenting from denial of certiorari).

in 382 Mass. at 794 (forbidding a lawyer who is a public official to use his public position "to influence, or attempt to influence, a tribunal to act in favor of himself or of a client").

The trial judge, as a result of the district attorney's public statements, was confronted with a unique and perhaps unprecedented circumstance. Nevertheless, as we read his findings, his impartiality was not affected, and therefore his obligation was to deny the motion for mistrial and go forward to a decision of the case.

4. We agree with the conclusion of the single justice of this court that relief in the precise form sought by the defendant should be denied. The judgment in the county court is to be amended to direct the trial judge to decide the case and order the entry of appropriate judgments.

*So ordered.*