COMMONWEALTH vs. SYLVESTER ELDER.

Hampden. February 9, 1983. — July 22, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & LYNCH, JJ.

*Practice, Criminal*, Mistrial, Double jeopardy, Trial jury-waived. *Constitutional Law*, Double jeopardy, Trial jury-waived. *Evidence*, Bias, Prior sexual conduct, Virginity, Cross-examination. *Rape-Shield Statute*.

Where this court, after concluding that the judge presiding at the bench trial of a criminal defendant had improperly ordered a mistrial, directed the judge to decide the case and enter appropriate judgments, and the judge thereupon found the defendant guilty and imposed sentence on him, there was no violation of double jeopardy principles nor was any unconstitutional burden placed on a defendant's choice of a bench trial over a jury trial. [745-749]

At the trial of indictments charging sexual offenses, the judge did not abuse his discretion in excluding the defendant's offer of proof of prior specific sexual acts of the complainant, as relevant to the issue of bias, where the defendant was able to elicit evidence of the complainant's hostility and bias through direct and cross-examination of the complainant, as well as through his own testimony, without the proffered evidence of prior sexual conduct. [749-751]

The judge at the trial of indictments charging abuse of a minor child and rape properly excluded evidence of the complainant's prior sexual conduct offered by the defendant for the purpose of counteracting the effect of evidence of the complainant's nonvirginity and the effect of her statement, elicited by the defense, that she had engaged in sexual relations only with the defendant. [751-754]

INDICTMENTS found and returned in the Superior Court Department on May 7, 1980.

The cases were heard by *O'Neil*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Terry Scott Nagel* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   After our decision in *Elder* v. *Commonwealth*, 385 Mass. 128 (1982), the judge found the defendant guilty on two indictments charging rape and abuse of a minor child (without force).   See G. L. c. 265, § 23.[1]   On appeal, the defendant asserts that the entry of judgment against him after the judge first declared a mistrial violates his constitutional rights to due process and equal protection, and the prohibition against double jeopardy.   The defendant also argues that the judge improperly applied the rape shield law to exclude probative evidence.   See G. L. c. 233, § 21B, inserted by St. 1977, c. 110.   We transferred the case to this court on our own motion.   We affirm.

We summarize the facts.[2]   The complainant was fourteen years old in early 1980, when the rapes occurred.   At that time, and for the previous three or four years, the complainant lived with her divorced mother in the defendant's home. The complainant's mother and the defendant lived as husband and wife, although they were not married.   The complainant's older sister stayed in the house only on her vacations from a boarding school for slow learners.

At trial, the complainant stated that her sexual relations with the defendant began when she was eleven.   The defendant frequently required her to submit to him before giving her permission to engage in various social activities.   She stated, "[E]very time I turned around, I had to do it."   The complainant identified four specific dates on which she claimed to have had intercourse with the defendant, and for which he was indicted:   February 19, February 20, February 22, and March 20, 1980.   Her situation came to the

---

[1] The defendant was indicted on four separate claims of rape.   Each indictment alleged a different date.   The defendant was found not guilty on two indictments.   On the two remaining indictments, the defendant was sentenced to two and a half years in a house of correction, the two sentences to run concurrently.   A single justice of the Appeals Court granted a stay of execution of sentence pending this appeal.

[2] Additional facts are presented in our discussion of the substantive issues.

attention of the authorities when she wrote a letter to a teacher after attending a class on rape. Immediately thereafter, the complainant was placed in a foster home.

1. *Entry of judgment after declaration of mistrial.* At the end of the defendant's bench trial, but prior to the entry of judgment and imposition of a sentence, the judge sentenced another defendant in an unrelated case. The district attorney responded to the sentence, which he felt was unduly mild, by publicly criticizing the judge for his leniency toward defendants. In a subsequent lobby conference, the judge invited the defendant, Elder, to move for a mistrial. After the defendant made that motion, the judge held a hearing. He ordered a mistrial and allowed a new trial, stating: "Given the present posture of the circumstances, circumstances created solely by the District Attorney, any decision of the Court will be perceived by some, perhaps many, as being suspect. While the Court knows that in so far as is humanly possible the decision reached would be a true judgment on the law and the evidence, it recognizes that two unnecessary results may obtain. They are the opening of an avenue of appeal should the judgment be in favor of the Commonwealth, and second, perhaps more important, it will appear that even-handed justice has not been done. For the reasons stated, a declaration of mistrial is a manifest necessity."

In response to the defendant's motion to dismiss, another judge of the Superior Court made a number of findings, including one on the reason for the mistrial: "The public utterances [of the district attorney] were capable of causing a reasonable apprehension on the part of the trial judge that whatever his decision in the *Elder* case it could and perhaps would be seen by a significant number of people as having been influenced by the District Attorney's statements." The judge then denied the motion to dismiss, and the defendant sought relief in this court, claiming that a new trial was barred on double jeopardy grounds. We directed the trial judge to decide the case and to enter appropriate judg-

ments. *Elder* v. *Commonwealth,* 385 Mass. 128, 133-135 (1982).[3]

The defendant now asserts that our decision to order entry of judgment in the case, rather than decide the double jeopardy question, as well as the judge's compliance with our decision to enter a judgment, violates his due process and equal protection rights and the prohibition against double jeopardy, secured under the United States Constitution and arts. 1, 11, 12, and 29 of the Massachusetts Declaration of Rights.[4] Obviously, we do not agree.

The defendant asserts that in *Elder* v. *Commonwealth, supra,* we should not have decided the propriety of the declaration of mistrial because it was not contested or briefed by either party.[5] However, we are not confined by the issues or theories advanced by the parties. We may decide cases on issues not raised by the parties.[6] In this case, our ruling on the decision to declare a mistrial was essential before we could reach the question whether a second trial was permitted.

The defendant also argues that we incorrectly decided his prior appeal.[7] See *Elder* v. *Commonwealth,* 385 Mass.

---

[3] Other facts concerning the procedural background of this case are detailed in *Elder* v. *Commonwealth, supra.*

[4] Although we have no express provision against prior jeopardy in the Massachusetts Declaration of Rights, it is a part of the common law and statutory law of the Commonwealth. *Commonwealth* v. *Vanetzian,* 350 Mass. 491, 495 (1966). See G. L. c. 263, § 7.

[5] The defendant contends that the decision of the mistrial issue and the subsequent remand "functioned as a penalty wrought upon Mr. Elder for the exercise of his right to pretrial review of his double jeopardy claim." See *Abney* v. *United States,* 431 U.S. 651, 662 (1977). We disagree. Since the propriety of the mistrial order is essential to a determination of the double jeopardy issue, the defendant should have known that he risked assessment of the issue when he appealed.

[6] Generally, we do not consider issues not addressed by the parties. Massachusetts Rule of Appellate Procedure 16 (a) (4), as amended, 367 Mass. 919 (1975), states that we "need not pass upon" those issues, but does not prohibit us from reaching them when necessary.

[7] In our consideration of the defendant's claim, we analyzed his arguments under a "manifest necessity" standard. *Elder* v. *Commonwealth, supra* at 133-134. By using this standard, we gave the defendant's argu-

128, 133-135 (1982). We decline to reconsider that opinion.[8]

The defendant appears to argue that the judge violated the prohibition against double jeopardy when he entered judgment.[9] The defendant contends that the judge's original declaration of a mistrial ended his trial in such a manner that renewal of the proceedings in any way subjected him to double jeopardy. However, the defendant fails to support his view that entry of judgment after declaration of a mistrial has been revoked subjects the defendant to double jeopardy. *Breed* v. *Jones,* 421 U.S. 519 (1975), is distinguishable. There the Court held that two trials constituted double jeopardy, although the first trial ended by transfer-

---

ments even greater consideration than he was entitled to under Federal law. When a defendant requests the mistrial, his interests are routinely given less weight than they are under the manifest necessity standard.

[8] The defendant cites no cases which induce us to alter our decision. This is not a case in which the judge or the jurors were prejudiced by publicity about the particular case or defendant. See *Sheppard* v. *Maxwell,* 384 U.S. 333 (1966); *Marshall* v. *United States,* 360 U.S. 310 (1959); *Worcester Telegram & Gazette, Inc.* v. *Commonwealth,* 354 Mass. 578 (1968). Compare *Woodbury* v. *Commonwealth,* 295 Mass. 316 (1936) (contempt conviction). Nor is it a case in which the judge's own actions or participation in the case was somehow questionable or improper. See *Furtado* v. *Furtado,* 380 Mass. 137, 151 (1980); *Lena* v. *Commonwealth,* 369 Mass. 571, 575 (1976); *Commonwealth* v. *Howard,* 367 Mass. 569 (1975). Thus, this case does not violate the rule that "[t]he administration of justice by the courts ought not only to be, but it ought to appear to be, impartial and efficient." *King* v. *Grace,* 293 Mass. 244, 247 (1936). Any appearance of bias was due only to extrajudicial conduct over which the judge had no control, and which could have affected any proceeding over which the judge presided. There was no improper conduct or actual bias shown by the judge himself. Indeed, the judge declared a mistrial based only on the possibility that the public would perceive him to be biased. Thus, it was appropriate to direct him to enter judgment.

[9] The defendant further argues that he was deprived of his due process right to a judgment entered at the conclusion of his trial. See U.S. Const. amend. XIV; arts. 1, 11, 12, and 29 of the Massachusetts Declaration of Rights. We fail to see how the defendant could have been harmed by the time lag between the end of his trial and the entry of judgment. The defendant offers no legal authority to support his claim. His failure adequately to address the issue constitutes a waiver. See Mass. R. A. P. 16 (a) (4), *supra.*

ring a juvenile defendant to the Superior Court for a second trial. The case says nothing about entry of judgment after a mistrial is declared.

We believe that, in this case, entry of judgment after a mistrial had been declared in the interim did not violate double jeopardy principles. Since the declaration of a mistrial did not terminate the prosecution in the defendant's favor, and since the defendant had moved for a mistrial, the judge contemplated that principles of double jeopardy were not applicable. See *United States* v. *Scott*, 437 U.S. 82, 95 (1978); *Costarelli* v. *Commonwealth*, 374 Mass. 677, 682 (1978). We believed that principles of double jeopardy did not bar a new trial, and therefore we remanded the case for entry of judgment.

The defendant also argues that our remand to the judge for entry of judgment was unconstitutional because a similar remand would have been impossible had he exercised his constitutional right to a trial by jury. According to the defendant, our decision burdens his choice of a bench trial over a jury trial and violates the equal protection principles of the Fourteenth Amendment to the United States Constitution and the parallel provision in the State Constitution.

In support for this proposition, the defendant cites *United States* v. *Jenkins*, 420 U.S. 358, 365 (1975) (overruled on other grounds, *United States* v. *Scott*, 437 U.S. 82 [1978]), which states, "Since the Double Jeopardy Clause of the Fifth Amendment nowhere distinguishes between bench and jury trials, the principles given expression through that Clause apply to cases tried to a judge." *Jenkins, supra.* However, in our decision we did not distinguish between the application of double jeopardy principles to bench and jury trials. Rather, we recognized the inherent physical differences between the two types of trials, which permit double jeopardy principles to be triggered at different times. For example, "jeopardy attaches when a jury is empaneled and sworn, . . . [and attaches] in a bench trial, when the judge begins to receive evidence." *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, 569 (1977).

If a jury had been the trier of fact, the judge could have requested a verdict before declaring a mistrial. Judgment could later have been entered on the verdict if his determination of a mistrial proved incorrect. Cf. *United States* v. *Jenkins, supra,* overruled on other grounds, *United States* v. *Scott, supra* (judgment entered on a verdict of guilty, after appellate court reversed judgment of acquittal notwithstanding the verdict, does not constitute double jeopardy). We therefore reject the defendant's challenges to our decision in *Elder* v. *Commonwealth, supra.*

2. *Evidence of bias.* Relying on *Commonwealth* v. *Joyce,* 382 Mass. 222 (1981), the defendant claims that the judge erred in excluding evidence of the complainant's prior sexual acts as relevant on the issue of bias, thus denying him his right to confront witnesses against him. U.S. Const. amend. VI. *Douglas* v. *Alabama,* 380 U.S. 415, 418 (1965). *Pointer* v. *Texas,* 380 U.S. 400 (1965). The defendant claims that the judge should have permitted him to present evidence of the complainant's escalating hostility towards the defendant. He asserts that the complainant was willing to fabricate rape charges against him to prevent him from interfering with her intimate relations with her boyfriend. To make these points, the defendant offered to prove that the complainant had sexual relations with her boyfriend; that the defendant had discovered her in a "diaphanous" nightgown with a bloodstain on it when only her sister and a male cousin were in the house at the time, after which the complainant became increasingly hostile to him;[10] and that her mother had discovered the complainant in the house with a boy who had his hand near her pubic area. The judge considered this evidence to be irrelevant. G. L. c. 233, § 21B. There was no error.

---

[10] Contrary to the defendant's offer of proof, the defendant stated that the complainant did not become more hostile after he found her on that occasion. Furthermore, the defense counsel conceded that an inference that blood on the nightgown could have been due to a rupture of the hymen was "quite conjectural."

At trial, the judge permitted the defendant to introduce evidence of hostility between the complainant and the defendant, which increased when the defendant took steps to terminate the complainant's relationship with her boyfriend. The defendant stated that over time the complainant became hostile to his orders and directions concerning the hours she kept. She would pout, go to her room and slam the door, and refuse to speak. The complainant stated that the defendant "hollered" at her and punished her, and that she was afraid of him.

The defendant also stated that the complainant became angry and resentful towards him on March 18, 1980, when he discarded a jacket she had brought home from school, not realizing that she had received it from her boyfriend. On March 21, 1980, the defendant attempted to separate the complainant from the boyfriend, telling them both that she was too young for boys. A final dispute between them occurred when the defendant refused to allow the complainant to attend a rock concert on March 23, 1980, because she was too young. The complainant admitted that the defendant's actions angered her.

The judge permitted the defendant to test the complainant's hostility and bias against the defendant by reason of his interference with her relationship with her boyfriend. Evidence of bias was fully elicited through direct and cross-examination of the complainant, as well as through testimony of the defendant. Thus, the defendant was able to argue to the trier of fact that the witness was biased on the record he established, without introducing evidence of prior sexual history. Cf. *State v. DeLawder*, 28 Md. App. 212 (1975).

Since the defendant was able to establish bias without the proffered evidence, this case differs markedly from *Commonwealth* v. *Joyce, supra; Davis* v. *Alaska*, 415 U.S. 308 (1974), and *Commonwealth* v. *Ferrara*, 368 Mass. 182 (1975). In each of those cases, the introduction of the prior pending prosecutions or prior records was essential, since there was no other way in which the bias of those witnesses

could be elicited. In this case, however, there is no lack of evidence on the issue of bias. Where evidence of bias is available by other means, no evidence of the complainant's prior sexual history should be admitted.[11]

The judge properly limited the scope of the evidence after adequate exposure on the issue of bias, and he gave proper attention to "the important policies underlying the rape-shield statute," as well as the confrontation clause. *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 (1981).[12] We conclude that the judge did not abuse his discretion when he decided that the proposed further evidence on bias was unnecessary and that the probative value of the proffered evidence was outweighed by its prejudicial effect. See G. L. c. 233, § 21B; Fed. R. Evid. 403; *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982); *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981).

3. *Evidence of nonvirginity.* The defendant also asserts that, pursuant to a statutory exception to the rape shield law and to his confrontation rights, the judge should have permitted introduction of the complainant's prior sexual history to counteract evidence of the complainant's nonvirginity.

Evidence of lack of virginity was initially presented by the prosecution, which called a doctor who had examined the complainant shortly after she had made her statement to the authorities. He stated that his physical examination re-

---

[11] This case contains no allegations that the defendant threatened to expose the complainant's other sexual relations, see *State* v. *Jalo*, 27 Or. App. 845 (1976), nor that the complainant threatened the defendant with charges of rape, see *Marion* v. *State*, 267 Ark. 345 (1979). Hostility alone has been held to be an inadequate basis for the introduction of specific instances of the complainant's prior sexual acts. See *Hubbard* v. *State*, 271 Ark. 937 (1981).

[12] Even before the enactment of the rape-shield law, specific instances of sexual conduct between the victim and persons other than the defendant were inadmissible. *Commonwealth* v. *Joyce*, 382 Mass. 222, 227 (1981). See *Commonwealth* v. *Gouveia*, 371 Mass. 566, 569 (1976); *Commonwealth* v. *McKay*, 363 Mass. 220, 226 (1973); *Commonwealth* v. *Regan*, 105 Mass. 593, 594 (1870). See also P.J. Liacos, Massachusetts Evidence 149-150 (5th ed. 1981).

vealed that she had had sexual intercourse, but that he could not determine whether she had engaged in more than one sexual act.[13]

On cross-examination, defense counsel asked the doctor if the complainant had claimed "never to have been involved in any other sexual act with any other individual" and, over the Commonwealth's objection, the judge permitted the doctor to state that the complainant denied such experience with anyone other than the defendant. At the close of the doctor's evidence, the prosecution moved to admit the hospital report, which included the doctor's report containing the complainant's statement to the doctor denying sexual relationships with persons other than the defendant. The defendant did not object to this aspect of the hospital report.

Thereafter, the defendant attempted to introduce evidence concerning the complainant's prior sexual history with other men to counteract this evidence. The defendant claimed that the circumstantial effect of the evidence of nonvirginity, combined with the complainant's statement in the medical record, required introduction of the complainant's prior sexual history. The judge denied the defendant's request. He said, "[T]he fact that there is penetration is something that does not in any way point the finger to your defendant as the one doing it." The judge further observed that the complainant's sexual history clearly was not relevant to charges of statutory rape because a defendant is not entitled to exoneration if he had sexual relations with a complainant under the age of consent even if others also have had sexual relations with that person. See *People* v. *Fritts*, 72 Cal. App. 3d 319 (1977).[14]

---

[13] The doctor stated that "[o]nce the vagina is opened and stretched out, it's impossible to say whether this is a repeated problem having occurred over and over again or has occurred just one time . . . [and in this case there were] signs of significant penetration."

[14] Consent is not a defense to a charge of statutory rape. See G. L. c. 265, § 23; *Commonwealth* v. *Ellis*, 321 Mass. 669, 669-670 (1947). Further, the judge stated that he believed it was irrelevant whether the complainant had had sexual relations with more than one person. The

The defendant argues that he should have been able to admit evidence of the complainant's prior sexual history to counteract the evidence of nonvirginity under the exception to the rape shield law permitting admission of "evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim." G. L. c. 233, § 21B. We do not agree. In this case, the judge viewed lack of virginity as a condition, and conducted an in camera hearing on its admissibility, as required by G. L. c. 233, § 21B. The judge found, after balancing the interests of the defendant with the purposes of the rape shield law, that the evidence was not sufficiently probative to outweigh the policy of the statute to protect persons "so that they are not hesitant to come forward and complain of rape."

We add that lack of virginity is not a "condition" under G. L. c. 233, § 21B, except in limited circumstances. See *Commonwealth* v. *McKay*, 363 Mass. 220 (1973). Normally, lack of virginity cannot be linked to the time of the rape, nor can the identity of the sexual partner be determined from this physical characteristic. Evidence of lack of virginity is unlike evidence of the presence of sperm, bruises in the vaginal area, and other data which are more relevant to the proof of rape. Since lack of virginity has such a tenuous connection to most rape cases, it ordinarily should not be admitted.[15]

The defendant also contends that to satisfy his confrontation rights evidence of the prior sexual conduct of the complainant should have been admitted to neutralize any

_____

only issue that he indicated was critical was whether this defendant had access to this complainant at a time when she was under the age of consent.

[15] See *Commonwealth* v. *McKay*, 363 Mass. 220 (1973), in which this court reasoned that lack of virginity had "little probative value on the issue of consent," but that "[o]n the other hand, the status of the victim as a virgin at the time of the alleged crime has far more probative value on the issue of consent." *Id.* at 227. *McKay* differs from this case because here the issue of consent is not at issue. The defendant concedes that application of the case to this situation is "problematic."

incriminating inference that could be drawn from the fact
of her nonvirginity, and particularly from her statement
that she had engaged in sexual relations only with the de-
fendant. We do not agree. The prosecution did not rely on
the complainant's statement to prove its case. Further, it
was the defendant who initially elicited from the doctor the
complainant's statement, and who now claims that the
statement greatly compounds the effect of the nonvirginity
evidence. It was not an abuse of discretion for the judge to
force the defendant to live with the complainant's statement,
which the defendant brought out. Since the defendant
elicited the statement on cross-examination, he cannot now
complain of its prejudicial effect. See *Commonwealth* v.
*Ladetto*, 349 Mass. 237, 244 (1965); *Commonwealth* v.
*Simpson*, 300 Mass. 45, 49-51, cert. denied, 304 U.S. 565
(1938). *Commonwealth* v. *Althause*, 207 Mass. 32, 45
(1910). See also *Orenstein* v. *United States*, 191 F.2d 184,
193 (1st Cir. 1951). Other jurisdictions support this view.
See *People* v. *Kilfoil*, 27 Cal. App. 29, 35-36 (1915); *Yates* v.
*Commonwealth*, 211 Ky. 629, 634-635 (1925). See generally
*State* v. *Washington*, 257 N.W.2d 890, 892-893 (Iowa 1977),
cert. denied, 435 U.S. 1008 (1978). A defendant may not
put damaging evidence on the record and then rebut it with
potentially more damaging, prejudicial, and inflammatory
evidence of doubtful relevancy.

   We conclude that the judge did not err in excluding the
defendant's offer of proof of prior specific acts of the com-
plainant on the issue of bias or to counteract evidence of
nonvirginity.

*Judgments affirmed.*